500 So.2d 909 (1987)
INVESTORS ASSOCIATES LTD. Plaintiff-Appellee,
v.
B.F. TRAPPEY'S SONS INC. Defendant-Appellant.
No. 85-996.
Court of Appeal of Louisiana, Third Circuit.
January 7, 1987.
Writ Denied February 20, 1987.
*910 Barham and Churchill, John F. Whitney, and Mack E. Barham and Gary J. Elkins, New Orleans, for defendant-appellant.
Gibbens and Blackwell, John Blackwell, New Iberia, Poindexter, Bowers and Tynan, Dale W. Poindexter, New Orleans, for plaintiff-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
B.F. Trappey's Sons, Inc. (Trappey's) appeals the judgment of the trial court granting Investors Associates, Ltd. (Investors) $67,792 for Trappey's breach of a contractual warranty provision. The trial court concluded that Trappey's breached a condition of its contract with Investors by selling Trappey's corporation to General Wiltz Segura and Perry Segura without first securing an agreement with the purchaser to pay a success fee to Investors for identifying a suitable acquisition candidate. The Seguras were dismissed on a motion for summary judgment prior to trial on the merits and this judgment has not been appealed. Trappey's contends that the trial court erred in holding: (1) that the contract provided for a success fee for Investors' assistance in the identification of a buyer, and in holding Investors even gave such assistance; (2) that Trappey's had an affirmative duty to bring Investors and the prospective purchaser together, and that it breached that contractual duty; and (3) that Trappey's was liable for damages where Investors proved that if the contract's warranty provision had been observed, any success fee would have been paid and where there was no competent evidence of the gross purchase price on which to base a damage award. We reverse.

FACTS
Trappey's and Investors entered into a written agreement drafted by Investors on September 29, 1982, which provided in pertinent part:
"By this letter, B.F. Trappey's Sons, Inc., hereby engages Investors Associates, Ltd. to assist our company in the establishment of a satisfactory banking relationship and the identification of a suitable acquisition candidate in regard to the sale or merger of Trappey's. Investors Associates shall be retained on an exclusive basis to accomplish the above goals subject to the limitations set forth below.
* * * * * *
The scope of your [Investors] engagement shall include, but not be limited to the following areas:
* * * * * *
3. Seek out potential acquisition/merger candidates and assist Trappey's in obtaining the highest and best terms for the eventual sale or merger of the company. The conclusion of the sale or merger of the company to a prospect identified by Investors Associates shall represent the successful completion of this task regardless of the date of closing such transaction.

However, it is understood that ongoing negotiations for the sale of Trappey's to Joan of Arc Inc., Thomas J. Lipton, Inc. or a local investor group who wish to remain anonymous, are not included in this agreement and any eventual sale agreement with any of these companies is to be concluded by Trappey's on an *911 independent basis and is exclusive of this agreement.

* * * * * *
Investors Associates shall ... earn a success fee in consideration of the identification of a suitable acquisition/merger candidate.
* * * * * *
Upon receipt and acceptance of a satisfactory letter of intent to acquire Trappey's or to enter into a merger agreement with Trappey's, a fee equal to 1% of the gross purchase price up to $6,700,000 and 2% of the gross purchase price in excess of $6,700,000 shall be due and payable from the acquiring party or merger partner to Investors Associates.
* * * * * *
During the term of this engagement, Trappey's agrees to reimburse all out of pocket expenses incurred by Investors Associates and commencing October 1, 1982, to pay a per diem of $500 for travel time and on site consultation with Trappey's. The per diem for travel time and on site consultation shall be a total of $500 for each day that travel or on site consultation is performed by employees of Investors Associates and shall apply regardless of the number of Investors Associates' employees who engage in said activities on any given day. Trappey's hereby warrants that no financial commitment or letter of intent resulting from your effort can be entered into or accepted unless or until the above success fees have been paid. * * *"
Subsequent to the signing of its contract, Investors toured Trappey's physical plants in New Iberia and Lafayette, examined Trappey's financial records and prepared a financial report for presentations to potential buyers. In connection with the acquisition of Trappey's, Investors unsuccessfully met with prospective buyers in New Orleans, Chattanooga and New York. Though the record does not establish the total amount paid, Trappey's reimbursed Investors' for expenses and paid it a $500 per diem in connection with its efforts to identify a buyer; these payments were part of the consideration provided by the contract and were not at issue.
In late October 1982 Trappey's corporate officials and representatives of Investors held an informal meeting at a New Iberia country club to see if a local buyer could be found. General Wiltz Segura attended that meeting, but testified that this gathering did not influence his later decision to acquire Trappey's. Shortly thereafter a more formal meeting, again conducted to see if a local acquisition candidate existed, was held at the People's Bank in New Iberia. Approximately 15 local businessmen attended, including General Segura and his brother, Perry Segura; personnel from Investors were present to participate in any discussions which arose, and they had prepared materials on leveraged corporate buy-outs.
Subsequent to the People's Bank meeting the Seguras developed an interest in Trappey's. The Seguras hired A.A. Harmon and Company, an accounting firm, to review the corporate books and the physical plant so that they could formulate an offering price for the Trappey's stock. Harmon's field accountants, Terrell LeGlue and John McGraft, met with Jack Blenderman, Trappey's president, and Thomas Schmidt, Trappey's comptroller, examined Trappey's financial records and then recommended to the Seguras a top price per share of $295.
On November 23, 1982, Trappey's shareholders were faced with competing purchase offers from Joan of Arc and the Seguras. After bidding competition, a majority of Trappey's stockholders accepted the Seguras' top offer of $290 per share to purchase the company.
Shortly after Trappey's acquisition by the Seguras Investors made demand on Trappey's for payment of a success fee in the amount of $67,792. Trappey's and the Seguras declined to pay the fee contending that Investors did not identify the Seguras as potential corporate purchasers.

*912 CONTRACT INTERPRETATION
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. Art. 2046; Kalmn, Inc. v. Walker Louisiana Properties, 488 So.2d 340 (La.App. 3rd Cir.1986). The aim of contract interpretation is the discernment of a compatible meaning to all provisions of an agreement. Farrell v. Hodges Stock Yards, Inc., 343 So.2d 1364 (La.1977). Louisiana contracts are to be interpreted in light of the common intent of the parties, and in light of all of the provisions, so that each provision is given the meaning suggested by the contract as a whole. LSA-C.C. Arts. 2045 and 2050; Pogo Producing Co. v. Sea Robin Pipeline Co., 493 So.2d 909 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 310 (La.1986). In ascertaining the common intentions of the parties to the contract, recourse must first be obtained by construing the contract or agreement as a whole; if that process is not determinative, then the next subject of inquiry is the discernment of the circumstances surrounding the parties at the time of contracting. Henry v. Ballard & Cordell Corp., 418 So.2d. 1334 (La.1982). Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law. The use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. See Kemp v. Hudnall, 423 So.2d 1260 (La.App. 1st Cir.1982), writ denied, 428 So.2d 474 (La.1983); and Wilson v. Cost + Plus of Vivian, Inc., 375 So.2d 683 (La.App. 2nd Cir.1979).
Our initial inquiry, therefore, is whether the meaning of the word "identify" can be discerned from the four corners of the contract.
The trial court concluded that: (1) the agreement between Investors and Trappey's was ambiguous; (2) the ambiguities must be construed against Investors; (3) despite the resolution of the ambiguities against Investors, its assistance in identifying the Seguras was sufficient for them to recover the success fee stipulated in the agreement; (4) the Seguras did not rely on Investors to any appreciable extent; and (5) it was incumbent on Trappey's to refer the Seguras to Investors when it became apparent that the Seguras had an interest in purchasing the company.
We conclude that it was error of law for the trial court: (1) to resort to extrinsic evidence when the intention of the contract can be determined from the four corners of the instrument; (2) to interpret the contract so that Investors did not have to be the sole identifier of the ultimate purchaser in order to earn the success fee; and (3) to conclude that Trappey's had a contractual duty to bring the Seguras and Investors together before consummating the corporate sale.
The following language perhaps best summarizes the trial court's reasoning:

"Nonetheless though, to get the true intent of the parties, you have to read this whole thing together, in my view and when I do that, I don't find an obligation on the part of plaintiff to be the sole identifier. Now, when you consider the circumstances surrounding the entry into this agreement, you have to remember that it was contemplated that local prospects would be considered. Those local prospects, both in terms of geography and familiarity had to be more familiar to the defendant than to the plaintiff and it would be reasonable to expect that the defendant would point out local prospects to the plaintiff. This is particularly true when it was the object of the defendant and obviously of its shareholders, and there was interest in the community to resolve the situation, the problem with the defendant, in a manner that the plant would continue to operate in New Iberia, to provide a payroll, to help the local economy and of course so that, presumably the profit would stay local. I realize that the effort was not to be confined to that, but it was certainly *913 to include that. That was a genuine interest and the evidence is that many of the people who attended these meetings were there because of that, even though they retained no interest afterwards."

All clauses of a contract must be interpreted one by the other. C.C. Art. 2050. Practical effect is to be given to all parts of a contract, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. John Bailey Contractor v. State Dept. of Transportation and Development, 439 So.2d 1055 (La.1983). Although the contract in question is poorly drafted, the contract is not ambiguous. Identify is defined in Webster's as "to show to be a certain person or thing; fix the identity of; show to be the same as something or someone assumed, described, or claimed." (Emphasis added.) Examining the contract as a whole, it is more reasonably interpreted that to earn a success fee Investors had to be the sole identifier of the acquisition candidate. Paragraph 3 of the contract specifically states that the successful completion of Investors' task was the conclusion of a sale or merger of Trappey's to a prospect identified by Investors. Admittedly throughout most of the remainder of the agreement the word "identify" is not consistently qualified to show the necessity of identification by Investors, nevertheless according to the contract Investors only "earned[ed] a success fee in consideration of a suitable acquisition/merger candidate." (Emphasis added.) Furthermore, Trappey's warranty not to sell the corporation unless the purchaser paid Investors' success fee was triggered only if such sale was "resulting from your [Investors'] effort...." Paragraph 3 defined the successful completion of Investors' task which is clear and explicit. The inclusion of that qualifying language was intentional. The trial court's reliance on extrinsic evidence renders that qualifying language meaningless. Therefore, it was improper for the trial court to resort to extrinsic evidence when the parties' intent was ascertainable by reading the entire agreement.
The trial court correctly concluded that the Seguras relied very little on Investors' efforts. The Seguras abandoned use of Investors' prospectus of Trappey's because of Investors' inability to adequately explain to the Seguras' accountants the basis for its computations. It was uncontroverted that the Seguras relied on their own knowledge of financing, valuation of immovable property, and the efforts of their own accountants. In ruling that Investors earned its success fee as the result of the meeting its representatives attended with the Seguras at People's Bank, the trial court emphasized that, despite the quality of Investors' presentation, the Seguras' interest in Trappey's germinated because of the meeting. However, even after the People's Bank meeting, Investors' internal communications to Trappey's still did not mention the Seguras as potential buyers.
If there are any ambiguities in the contract language, they must be construed against Investors, the party who prepared the contract. See Kenner Industries v. Sewell Plastics, 451 So.2d 557 (La.1984). Any ambiguity regarding the term "identify" should have been resolved in Trappey's favor. Had Investors wished to broaden the definition of the word "identify" beyond the explicit language of Paragraph 3 of the contract, it was incumbent upon Investors to so specify.
Likewise there is no provision in the contract that Trappey's was under a duty to bring Investors and the Seguras together. Logically, if Investors identified the Seguras, it would have been superfluous to say that there was an obligation to bring the parties together. Moreover, there is nothing in the record to show that Trappey's hindered the Seguras' access to Investors in any way.
For the foregoing reasons the judgment of the trial court is reversed and set aside. Judgment is ordered in favor of Trappey's and against Investors, dismissing Investors' claim with prejudice. Costs of the *914 trial court and appeal are assessed to Investors.
REVERSED AND RENDERED.
LABORDE, J., concurs in the result.