LABORDE, Judge.
This is a contract interpretation case arising from a compromise agreement settling the contested probate of a will. The language of the pertinent provisions of the agreement is so clear and so unambiguous that rejection of the trial court’s interpretation is mandated. Accordingly, we reverse.
FACTS
The relevant facts of this case are not in dispute. Mr. Wallace Reed Davidson died testate on January 14, 1982. Mr. Davidson was survived by his second wife, Henrietta Forrest, and a child from his first marriage, Celia D. Scrimpshire. Ms. Forrest died intestate on March 2, 1982. She was survived by her daughter, Courtney Forrest. On April 14, 1982, Celia Scrimpshire filed suit contesting the validity of the Davidson will citing several fatal flaws.
In order to resolve all of the disputes, the Davidson succession representative, Duncan M. Smith, Jr., Ms. Scrimpshire, The Forrest succession representative, Mr. Michael Forrest, and Courtney Forrest (represented by her father and duly appointed provisional tutor, Michael Forrest) executed an agreement on December 29, 1983. On the same day, the district court approved the compromise of the will contest. In pertinent part, the agreement provided:
“I.
DUNCAN M. SMITH, JR., testamentary executor of the estate of Wallace Reed Davidson shall deliver to the Succession of Penelope Leigh (formerly known as Henrietta Gunn Forrest) from the assets of the Succession of Wallace Reed Davidson in full ownership and free of trust, the following properties, to-wit:-
(a) One Hundred Ninety Thousand and No/100 ($190,000.00) Dollars CASH:
(b) Merchantable title to Washita Road property, Lafayette, Louisiana free of any and all encumbrances;
(c) All household furniture, furnishings, fixtures, appliances and effects located in or belonging to either the *17 Washita Road or Girard Woods Road property on the date of death of Wally Davidson, EXCEPT:
(i) men’s five-carat solitaire
(ii) men’s fur coat
(iii) Accutron watch
(iv) golf clubs
(v) mink bedspread
(vi) Sony Betamax
(vii) turquoise and gold men’s ring
(viii) sealskin coat with fur collar.”
“II.
A. Duncan M. Smith, Jr., Testamentary Executor of the estate of Wallace Reed Davidson shall deliver to Courtney Forrest from the assets of the Succession of Wallace Reed Davidson, in full ownership and free of trust, a certain amount of cash equal to eight (8%) percent of the fair market value of all assets comprising the gross estate of Wallace Reed Davidson as defined under the federal estate tax laws, (to include Items (a), (b), and (c) of paragraph I hereinabove, which shall pass to the succession of Penelope Leigh as per this compromise agreement as well as all other assets distributed or to be distributed as authorized herein), less all debts and expenses which would be allowed as a deduction in computing estate tax under federal law.”
The agreement also provided for the distribution of the other assets of the Succession of Davidson.
After taxing authorities, federal estate tax and Louisiana inheritance tax, took their shares, disbursements were made. Only one item was challenged — the sum due under the eight (8%) per cent of the gross estate clause (8% clause).
In hopes of putting the matter to rest, Courtney Forrest, through her father, was tendered $38,607.04 which allegedly represented the cash equivalent to 8% of the fair market value of all assets comprising the gross estate of Wallace Reed Davidson as defined under the federal estate tax laws. The tender was rejected. On motion of the Succession of Davidson and Duncan M. Smith, Jr., a rule was filed to show cause why the settlement should not be completed; specifically, why Courtney Forrest should not accept the tendered amount, $38,607.04.
TRIAL COURT’S JUDGMENT ON THE RULE
The rule was heard on July 28, 1986. After reviewing voluminous financial records and listening to two witnesses, the trial court rendered judgment in favor of Courtney Forrest. The trial court found that the “8% clause” entitled Courtney Forrest to $88,927.00 together with legal interest from date of judgment until paid. Basically, this sum represents 8% of the assets of the estate plus accruals and interest earned after the death of Mr. Davidson. While the Succession of Davidson timely requested written findings of fact and reasons for judgment in accordance with La.C. C.P. art. 1917, the trial court favored us with no written reasons for judgment.
ASSIGNMENTS OF ERROR
The Succession of Davidson assigns three errors to the trial court:
“1. The Trial Court was in error interpreting the December 1983 Agreement to mean that Forrest was entitled to an 8% interest in the income and accrual of the estate which was earned and took place after the death of Davidson. Trial Court should have followed the terms of the Agreement which gave Forrest 8% of the gross estate as defined by the Federal estate tax law less debts and expenses allowed as deductions in computing estate taxes under Federal law.
2. The Trial Court was in error in awarding a money judgment with interest. The proceeding instituted by the succession was a request for a declaratory judgment for the Court to interpret the terms of the December, 1983 Agreement. The Trial Court should have rendered a judgment interpreting the provisions of the December, 1983 Agreement.
3. The Trial Court committed errors in accepting the interpretation of the Agreement made by the C.P.A. witness, Dan Fruge. The Court should have in *18 terpreted the Agreement and then only accepted the testimony of Mr. Fruge which was material to the interpretation.”
GROSS ESTATE
The gravamen of appellant’s first assignment of error, and, indeed, this appeal, is that the trial court misinterpreted the meaning of “gross estate.”
The agreement expressly provides that Courtney Forrest is entitled to, inter alia,
“eight (8%) 'percent of the fair market value of all assets comprising the gross estate of Wallace Reed Davidson as defined under the federal estate tax laws, (to include Items (a), (b), and (c) of paragraph I hereinabove, which shall pass to the succession of Penelope Leigh as per this compromise agreement as well as all other assets distributed or to be distributed as authorized herein), less all debts and expenses which would be allowed as a deduction in computing estate tax under federal law.” (emphasis added)
Section 2031 of the Internal Revenue Code of 1954, 26 U.S.C. § 2031, defines the value of the gross estate of the decedent to include the value of all property, real or personal, tangible or intangible, owned by the decedent at the time of his death. Evidence of events subsequent to the date of a decedent’s death is irrelevant to the valuation of the decedent’s property at the time of death. See Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Walter v. United States, 341 F.2d 182, 185 (6th Cir.1965); Estate of NewComer v. United States, 447 F.Supp. 1368, 1370 (W.D.Pa.1978). It is clear that under federal estate law, the value of the “gross estate” is to be determined at the time of decedent’s death. Therefore, any evidence of subsequent accruals and interest is irrelevant to the valuation of the gross estate.
Appellees, in an attempt to justify the trial court’s interpretation, suggest three reasons that accruals and interest should be included in the “8% clause.” First, they point to La.C.C. art. 1626 which entitles legatees under particular title the right to take possession of the thing bequeathed, or claim the proceeds or interest thereof, from the day of the demand of delivery. This argument is fallacious: Courtney Forrest’s rights devolve from the compromise agreement of December 29, 1983, not from any testamentary disposition. In the second and related argument, appellees point to a previous offer made by the Succession of Davidson which makes reference to “8% of net estate at termination of administration after liabilities and expenses.” Appellees nakedly suggest that “net estate” includes accruals and interest; therefore, they would not settle for the lower amount offered in the December agreement. This argument lacks merit: “net estate” is not defined; so it does or does not contemplate accruals and interest according to the respective self-serving interpretations of the litigants. Third and perhaps appellees’ strongest argument is that the December agreement gives to Courtney Forrest 8% of the gross estate “to include ... all other assets distributed or to be distributed as authorized herein.” Appellees attempt to isolate the “all other assets distributed or to be distributed” and thereby argue that the quoted language contemplates accruals and interest. By placing the phrase in context, the words of the contract become clear and explicit and lead to no absurd consequences:[1]
“A. Duncan M. Smith, Jr., Testamentary Executor of the estate of Wallace Reed Davidson shall deliver to Courtney Forrest from the assets of the Succession of Wallace Reed Davidson, in full ownership and free of trust, a certain amount of cash equal to eight (8%) percent of the fair market value of all assets comprising the gross estate of Wallace Reed Davidson as defined under the federal estate tax laws, (to include Items (a), (b), and (c) of paragraph I hereinabove, *19 which shall pass to the succession of Penelope Leigh as per this compromise agreement as well as all other assets distributed or to be distributed as authorized herein), less all debts and expenses which would be allowed as a deduction in computing estate tax under federal law.”
The language in the parenthesis obviously modifies “gross estate ... as defined under the federal estate tax laws ...” Thus Courtney Forrest not only receives items “(a), (b), and (c),” but she also gets 8% of the items’ value along with 8% of the value of the other items distributed or to be distributed in the agreement. The language does not change the definition of “gross estate” under federal estate tax law as explained above. Under La.C.C. art. 2047, “[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter,” To this end, “gross estate” is limited to the assets at the time of decedent’s death.
In light of our interpretation of the contract, we deem it unnecessary to discuss appellants’ other assignments of error. Instead, we find it necessary to remand this suit to the trial court. The record shows that the Internal Revenue Service and the Succession of Davidson are in conflict over the value of the assets and the value of the deductions. Until the estate returns are made final, i.e. the tax return on Form 706, the determination of 8% of the gross estate is speculative at best.
For the above and foregoing reasons, the judgment on the rule by the trial court is reversed and the money judgment is vacated. Suit is remanded to allow the parties to complete the record and to allow the trial court to render judgment in a fashion not inconsistent with this opinion. Costs of this appeal are taxed to the Succession of Wallace Reed Davidson.[2]
REVERSED AND REMANDED.
KNOLL, J., concurs and assigns reasons.

. In Investors Associates Ltd. v. B.F. Trappey's Sons, Inc., 500 So.2d 909, 912 (La.App.3d Cir.); writ denied, 502 So.2d 116 (La.1987), we highlighted La.C.C. art. 2046 which reads, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent." Appellees have attempted, with their arguments, to make the contract nebulous so that further interpretation is allowed. In our view, no further interpretation is warranted.

. By way of reminder, the Succession of Davidson originally brought the rule nisi to force Courtney Forrest to accept the tendered amount . of $38,607.04 as the amount due her under the "8% clause." Both parties admitted at trial that the value of the gross estate was not yet made final. We tax costs to the Succession of Davidson for attempting to force a premature settlement.