KNOLL, Judge.
This appeal concerns termination damages for an alleged breach of contract between the plaintiff, Joseph D. Roubique (hereafter Roubique), and the Rapides Parish Airport Authority (hereafter Airport Authority). The trial court found that Rou-bique voluntarily terminated the contract and rendered judgment in favor of the Airport Authority, dismissing Roubique’s suit. Roubique brings this appeal contending the trial court erred in failing to find that the Airport Authority breached the contract. We affirm.
FACTS
In September of 1984, Roubique, a resident of Baker, Louisiana, and an employee with the Department of Transportation and Development (hereafter DOTD), was assigned by DOTD to assist the Airport Authority in its management of Esler Regional Airport located near Pineville, Louisiana. Mr. Roubique was considered very qualified in airport, management, and was sent to this facility to help alleviate its financial difficulties.
On March 6, 1985, Roubique entered into a contract with the Airport Authority wherein he agreed to serve as Esler’s airport manager at a salary of $36,000 per year for a term of five years. Although Roubique entered into this agreement, he did not resign from DOTD. Instead he took a leave of absence which expired on August 8, 1985.
Roubique was very concerned about his retirement benefits he had with the State because he made contributions to the State Employees Retirement System for 25 years. If Roubique was not eligible to become a member of the Parochial Retirement Program, which membership is limited to full time Parish employees, he would be subject to penalties in the State Retirement Program. Therefore, the contract contained the following provision:
“SECTION 8. RETIREMENT. The AUTHORITY will provide for the MANAGER to participate in the Parish Parochial Retirement Program and the Federal Social Security Program. Upon participation by the MANAGER in the Parish’s Parochial Retirement Program, the AUTHORITY agrees to contribute to the Parish Parochial Retirement Program and the Federal Social Security Program the employer’s contribution as required by the retirement programs.”
The contract also contained a provision for termination and damages. In pertinent part it provides:
“SECTION 3. TERMINATION AND DAMAGES:
a) In the event the MANAGER is involuntarily terminated by action of the AUTHORITY, and the MANAGER is willing and able to perform his duties under this agreement, then in that event the AUTHORITY agrees to pay the MANAGER a lump sum cash payment equal to twelve (12) months aggregate salary based upon the MANAGER’S monthly rate of pay at time of termination.
[[Image here]]
d) In the event the AUTHORITY at any time, without the written consent of the MANAGER fail [sic] to comply with any provision of this Agreement, then, in that event, the MANAGER may, at his option, be deemed to be ‘involuntarily terminated’ at the date of such refusal to comply within the meaning and context of this Agreement.
e) In the event the MANAGER elects to voluntarily resign his position with the AUTHORITY, the MANAGER shall give a minimum of ninety (90) days written *613 notice and shall not be entitled to any payment referenced in this Section. The MANAGER may not take vacation days during said period except upon consent of the Chairman of the AUTHORITY or the majority of the AUTHORITY.”
Without notice to the Airport Authority, on August 9, 1985, Roubique held a press conference in which he stated that he was leaving his position as manager of Esler Regional Airport to return to his job with DOTD. Roubique stated that the reason for his returning to DOTD was that the Airport Authority failed to make him a valid member of the Parochial Retirement System according to the statutory requirements and, therefore, he had to return to his former job, or risk penalization of his retirement benefits.
On November 19, 1986, the trial judge issued written reasons for judgment in which he held that Roubique had voluntarily resigned from his position as Airport Manager, thus the Airport Authority did not breach the contract.
TERMINATION OF EMPLOYMENT
Roubique contends that the Airport Authority failed to perform its part of the agreement in that it did not take the steps necessary to make him part of the Parochial Retirement System. Concerning this issue, the learned trial judge stated in his reasons for judgment:
“Mr. Roubique undoubtedly knew when he signed the employment contract on March 6th that there remained unresolved, at least in his mind, the retirement question. His becoming a member of the Parochial System was left entirely in his hands. The Authority did all that was asked and all that could be expected of it to assist Plaintiff in assuring himself that he could be enrolled as a member of the Parochial Retirement System. Rather than take any chances on the validity of his becoming a member of the Parochial Retirement System Plaintiff elected to resign as Manager of the Airport and return to the State.
Clearly Plaintiff was not involuntarily terminated even though he was of the opinion that the Authority had not provided for his participation in the Parochial System. The Airport Authority was satisfied that [it] had taken all steps to and would take any requested by Plaintiff to assure him being a member of the Parochial System. Because Plaintiff was not satisfied that such could be done he felt it necessary to resign. There was no violation [by the Airport Authority] of the employment contract sufficient to hold that Plaintiff was involuntarily terminated. ...”
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. Art. 2046; Investors Associates Ltd. v. B.F. Trappey’s Sons Inc., 500 So.2d 909 (La.App. 3rd Cir.1987), writ denied, 502 So.2d 116 (La.1987). The words of a contract must be given their generally prevailing meaning. LSA-C.C. Art. 2047. Contracts must be interpreted to achieve the intent and result intended by the parties thereto, and when such an intent is clear and express in the the agreement, the terms of the contract prevail, and comprise the law between the parties. Sabine Const. Co., Inc. v. Cameron Sewerage Dist. No. 1, 298 So.2d 319 (La.App. 3rd Cir.1974); see also Pogo Producing Co. v. Sea Robin Pipeline Co., 493 So.2d 909 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 310 (La.1986) and LSA-C.C. Art. 1983.
At the heart of this controversy is the question of making Roubique a member of the Parochial Retirement System, and whether the Airport Authority diligently pursued that objective as part of its duties under the contract. The trial court determined that it did. We agree.
The record is replete with testimony that the Airport Authority worked with Rou-bique in obtaining membership in the Parochial Retirement System. The Rapides Parish District Attorney’s office, counsel for the Airport Authority, met several times with Roubique and the Administrative Director of the Parochial Retirement System to carry out Roubique’s request *614 concerning his participation in the Parochial Retirement System. Mr. Chris Roy, chairman of the Airport Authority when Roubique was first hired in late 1984, and Colonel Leslie F. Prestridge, chairman of the Airport Authority when Roubique signed his employment contract with the Airport Authority, testified that the Airport Authority did everything it could to allow Roubique’s participation in the Parochial Retirement System, and took no action to prevent or interfere with that participation; under cross-examination Roubique agreed with these statements. On June 4, 1985, Colonel Prestridge attended a police jury meeting with Roubique for the express purpose of getting that public body to pass an ordinance “to authorize the president [of the police jury] to sign an intergovernmental agreement with the Airport Authority for administration by the police jury office of payroll and fringe benefits of [the] Airport Authority employees, as requested by the Airport Authority ...”. On June 11, 1985, just one week later, the Rapides Parish Police Jury passed an ordinance providing that “employees of the Rapides Parish Airport Authority will be eligible to participate in our [the Rapides Parish] retirement system.” On June 25, 1985, Roubique completed a personal history form for entry into the Parochial Employee’s Retirement System of Louisiana, and submitted it to the Parochial Retirment System with his personal contribution of $704.33 and the Airport Authority’s contribution of $544.50. Until convoking the press conference, Roubique was aware that the District Attorney’s office was drafting an intergovernmental agreement to further assure his participation in the Parochial Retirement System.
Although Roubique testified that the Airport Authority was generally aware that as of August 9, 1985, his leave without pay with DOTD expired, Roubique admitted that the minutes of the Airport Authority’s meetings were void of any demand on his part that his enrollment in the parochial system was urgent. Moreover, there was no fixed term in Roubique’s employment contract with the Airport Authority concerning its obligations to provide him membership within the Parochial Retirement System.- Accordingly, pursuant to LSA-C. C. Art. 1778 the Airport Authority had a reasonable time to provide Roubique with participation in the Parochial Retirement System. Under the circumstances presented herein, we do not find that the delays incurred up to the time of Roubique’s return to employment with DOTD constituted an unreasonable delay, especially considering the ongoing activities of the Airport Authority and the District Attorney’s office toward achieving this objective.
In summation, we do not find that the trial court erred in its determination that Roubique, not the Airport Authority, breached the employment contract, that Roubique voluntarily terminated his employment with the Airport Authority, and that he was not entitled to damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Roubique.
AFFIRMED.