713 So.2d 1185 (1998)
William J. HAMPTON and Cynthia S. Hampton
v.
HAMPTON, INC. d/b/a Hampton Mitsubishi and Mark A. Hampton.
No. 97 CA 1779.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
*1186 E. Wade Shows, Baton Rouge, for Plaintiffs/Appellants William J. and Cynthia S. Hampton.
Emile Joseph, Jr., W. Alan Lilley, Lafayette, and G. Thomas Arbour, Baton Rouge, for Defendant/Appellee Hampton, Inc. d/b/a Hampton Mitsubishi and Mark A. Hampton.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Ad Hoc.
CARTER, Judge.
This appeal arises from William J. (Jerry) and Cynthia Hampton's contention that under the terms of a buy out agreement *1187 reached between themselves and the defendant, Mark Hampton, that Mark Hampton would be responsible for reimbursing the 1995 corporate taxes on their shares of stock in an automobile dealership owned by the parties. The trial court granted Mark Hampton's peremptory exception of res judicata to the plaintiffs' motion to enforce the terms of the settlement and dismissed the underlying lawsuit.

FACTS
Mark Hampton formed Hampton, Inc. with his brother, Jerry, and sister-in-law, Cynthia, on June 30, 1992. Hampton, Inc. is a sub-chapter S corporation operating as a Mitsubishi automotive dealership in Lafayette. Mark Hampton was the only officer named when Hampton, Inc. was incorporated, and the only listed shareholders were Mark and his sister-in-law, Cynthia.
There were 1000 authorized shares of Hampton, Inc. stock with 510 shares issued to Mark and 490 shares issued to Cynthia. At the time of incorporation, the parties were under the impression that Mitsubishi Motor Sales U.S.A., which authorized the Hamptons' dealership, required one stockholder to own at least 51% of the outstanding stock. However, Cynthia and Jerry contend they had an agreement with Mark Hampton that the corporation would be run on an equal basis, that the records of Hampton, Inc. would be amended at a later date to reflect the true ownership interest, and that Mark Hampton was merely holding 10 shares for their beneficial interest. In addition to plaintiffs' contention that the corporation was to be run equally, they also allege Hampton, Inc. had an employment contract with Jerry, which provided that he receive the same salary as Mark Hampton, and other equal privileges. Alternatively, the Hamptons allege that Mark Hampton had induced plaintiffs to invest for the purpose of obtaining an unjust advantage.
Plaintiffs allege on April 30, 1993, Mark Hampton breached the employment contract with his brother by ordering him off the premises of the dealership and terminating his employment. According to plaintiffs, Mark Hampton asserted he was the true owner of the controlling interest in Hampton, Inc.
On January 28, 1994, plaintiffs filed a petition for declaratory judgment and damages against Hampton, Inc. d/b/a/ Hampton Mitsubishi and Mark Hampton. The suit sought a declaration regarding the stock ownership of Hampton, Inc., and asserted a claim by Jerry for the alleged breach of his employment contract. Settlement negotiations ensued and the parties agreed to a buyout agreement whereby Mark would purchase Cynthia's shares in Hampton, Inc.
On August 21, 1995, after Judge Foster Sanders met with the parties in chambers without the presence of their respective counsel, the terms of the agreement were reached and read into the court record.[2] On January 30, 1996, the parties reduced the settlement agreement into writing and signed the agreement. The agreement was also signed by Judge Sanders. The agreement was entitled, "CONSENT JUDGMENT, AS A RESULT OF THE STIPULATIONS OF THE PARTIES, SETTLEMENT AND COMPROMISE OF ALL CLAIMS AND BUYOUT AGREEMENT."
This agreement structured a buyout of Cynthia Hampton's 490 shares in Hampton, Inc. by Mark Hampton for a price of $975,000.00. The payments were scheduled over a 78 month period commencing on October 1, 1995. According to the agreement, once Mark Hampton had completed the payment schedule, Cynthia and Jerry Hampton would execute the necessary documentation to dismiss the litigation and have the stock certificate transferred to Mark Hampton. However, the agreement specifically provided the following provision regarding the status of the litigation:
STAY OF ALL LITIGATION
The parties hereto agree, consent and stipulate that so long as there is no default of *1188 the obligations undertaken herein, none of the parties will pursue any causes of action existing, known or unknown, one against the other, including, but not limited to, the above captioned and numbered lawsuit, which arises out, involves or is any way connected with the pending litigation and/or the operation, control, formation, management, structure, practices, commissions or omissions of Hampton, Inc., or its agents, officers, directors, employees or affiliated companies. (Emphasis added.)
The plaintiffs claimed that during the August 21, 1995 "in chambers meeting" with Judge Sanders, they reached an agreement that they would not have any obligation to pay corporate taxes for the year 1995, but that Mark Hampton would pay these taxes. During continued negotiations after the settlement conference, the stock was transferred to Mark Hampton, with the effective date of transfer back-dated as August 21, 1995. However, plaintiffs received a 1995 K-1 schedule from Hampton, Inc. representing taxes they owed on the stock from January 1, 1995, until August 21, 1995, when the stock was transferred. Plaintiffs contend they should be reimbursed for their tax liability as stated by the K-1 for 1995.
On October 31, 1996, plaintiffs filed a rule to enforce the terms of the settlement. Mark Hampton filed peremptory exceptions raising the objections of no cause of action and res judicata, and the dilatory exception raising the objection of improper use of summary proceedings in response to plaintiffs' motion to enforce the terms of the settlement. After a hearing, the trial court denied the exceptions of no cause of action and improper use of summary process, and granted the exception of res judicata, which dismissed the rule to enforce the settlement. The trial court further dismissed the entire suit on the basis that it had been settled pursuant to the January 30, 1996 agreement.
Plaintiffs appealed the judgment of the trial court assigning the following assignments of error:
(a) Dismissing the motion to enforce the settlement opining that the parties had fully and finally settled the litigation despite the language and terms of the in court stipulation and the out of court "settlement" documents.
(i) failing to recognize that the motion to enforce the settlement was properly brought and the issues addressed in that motion had not been finally resolved because the agreement between the parties was an ongoing "buy out" of appellants' interest in the appellee/corporation.
(ii) Failing to give force and effect to the order which expressly provided that the parties were free to address issues with the Trial Court if difficulties arose.
(b) Dismissing appellants' lawsuit despite the fact that there were no pending motions or other pleadings seeking that relief by appellees and, despite the Trial Court's order which stayed the appellants' lawsuit until all payments had been made by the appellees.
(i) Failing to give force and effect to the agreed order of the Trial Court that the appellants' lawsuit would not be dismissed until the last payment had been made by the appellees.
(ii) Failing to recognize that appellants' lawsuit had not been dismissed[.]
Hampton, Inc. d/b/a Hampton Mitsubishi and Mark Hampton answered the appeal and claimed the trial court erred in failing to grant its peremptory exceptions raising the objections of no cause of action and improper use of summary proceedings, and that the trial court erred in permitting the introduction of testimony of Judge Sanders in violation of the parol evidence rule.

DISCUSSION
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Sanders v. Ashland Oil, Inc., 96-1751, p. 7 (La.App. 1st Cir. 6/20/97); 696 So.2d 1031, 1036, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 16 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 479, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094; Spohrer v. Spohrer, 610 So.2d 849, 851-52 (La.App. 1st Cir.1992). In *1189 other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art.2045; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Martin Exploration Company v. Amoco Production Company, 93-0349, p. 4 (La.App. 1st Cir. 5/20/94); 637 So.2d 1202, 1205, writ denied, 94-2003 (La.11/4/94); 644 So.2d 1048; Spohrer v. Spohrer, 610 So.2d at 852. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art.2046; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346, p. 3 (La.App. 1st Cir. 4/8/94); 635 So.2d 758, 759, writ denied, 94-1206 (La.7/1/94); 639 So.2d 1167; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Stafford v. Jennings-Norwood Farm and Irrigation Company, Inc., 586 So.2d 735, 737 (La.App. 3rd Cir.1991), writ denied, 590 So.2d 590 (La.1992); Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d 909, 912 (La. App. 3rd Cir.), writ denied, 502 So.2d 116 (La.1987). The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. LSA-C.C. art.2046, comment (b); Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Spohrer v. Spohrer, 610 So.2d at 852.
In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d at 912. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Martin Exploration Company v. Amoco Production Company, 637 So.2d at 1205; Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d at 912.
When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. Sanders v. Ashland Oil, Inc., 696 So.2d at 1036; Martin Exploration Company v. Amoco Production Company, 637 So.2d at 1205; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 480. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art.2045. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Kuswa & Associates, Inc. v. Thibaut Construction Co., Inc., 463 So.2d 1264, 1266 (La.1985); Commercial Bank & Trust Company v. Bank of Louisiana, 487 So.2d 655, 659 (La.App. 5th Cir.1986). A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053; Sanders v. Ashland Oil, Inc., 696 So.2d at 1036-37; Allen v. Burnett, 530 So.2d 1294, 1303 (La.App. 2nd Cir.1988).
Whether a contract is ambiguous or not is a question of law. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; Spohrer v. Spohrer, 610 So.2d at 853; Myers v. Myers, 532 So.2d 490, 494 (La.App. 1st Cir.1988); Aycock v. Allied Enterprises, Inc., 517 So.2d 303, 309 (La.App. 1st Cir.1987), writs denied, *1190 518 So.2d 512, 513 (La.1988). However, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; see also G/O Enterprises, Inc. v. Mid Louisiana Gas Company, 444 So.2d 1279, 1286 (La.App. 4th Cir.), writ denied, 446 So.2d 318 (La.1984); Universal Iron Works, Inc. v. Falgout Refrigeration, Inc., 419 So.2d 1272, 1274 (La.App. 1st Cir. 1982). When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; Spohrer v. Spohrer, 610 So.2d at 853; Conoco, Inc. v. Tenneco, Inc. By and Through Tennessee Gas Pipeline Company, 524 So.2d 1305, 1312 (La.App. 3rd Cir.), writ denied, 525 So.2d 1048 (La.1988). In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Sanders v. Ashland Oil, Inc., 696 So.2d at 1037; Spohrer v. Spohrer, 610 So.2d at 853, quoting from Borden, Inc. v. Gulf States Utilities Company, 543 So.2d 924, 928 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989).

1995 Corporate Tax Claim
Plaintiffs claim the parties agreed their 1995 taxes incurred from ownership of stock in Hampton, Inc. would be reimbursed by Mark Hampton. It is undisputed this provision is not contained in either the oral recitation or the agreement signed on January 30, 1996. The trial court allowed the introduction of the deposition of Judge Sanders to determine what occurred during the meeting. In its oral reasons for judgment, the trial court referenced a passage from Judge Sanders' deposition and ruled the consent judgment addressed the matter raised by the plaintiffs.
After our review of the agreement, we find the admission of such parol evidence was erroneous. We do not find the language of the agreement to be ambiguous, or susceptible to more than one meaning. Instead, we find it clearly addresses the issue of reimbursement of the plaintiffs' 1995 corporate taxes. In the transcript of the compromise recited in open court on August 21, 1995, Judge Sanders stated, "Mr. Jerry Hamilton [sic][3] gives up his claim for any taxes that he's had to pay as a result of K-1s that showed him receiving profit where he did not actually receive any."
The January 30, 1996 agreement contained the following provision:
III. 5. Upon performance of the obligations required of Mark A. Hampton pursuant to this Order and agreement, William J. and Cynthia S. Hampton shall execute a complete formal receipt and release document in favor of Hampton, Inc. and Mark A. Hampton encompassing the release provisions set forth in Section I. above and shall also release Mark A. Hampton and Hampton, Inc. from any and all claims that they may have concerning taxes they have or may have to pay for profits made by Hampton, Inc. which they claim they did not receive;
Considering the agreement as a whole, we find the issue of reimbursement of corporate taxes is contained as a conditional obligation. A conditional obligation is one dependent on an uncertain event. LSA-C.C. art. 1767. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. LSA-C.C. art. 1767. The right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met. Washington National Insurance Co. v. Brown, 94-1346, p. 7, n. 4 (La.App. 1st Cir. 4/7/95); 654 So.2d 724, 728 n. 4, writ denied, 95-1699 (La.10/13/95); 661 So.2d 497. Courts do not construe stipulations in a contract as suspensive conditions unless the express contract language compels such construction. Tilley v. Lowery, 511 So.2d 1245, 1247 (La.App. 2nd Cir.1987)
*1191 The above referenced portion of the agreement must be considered in pari materia with the provision of the agreement ordering all litigation and claims to be stayed. Once Mark Hampton fulfills his obligation by paying for Cynthia's shares, the plaintiffs must execute the release provisions of all claims they have related to the payment of corporate taxes. However, until Mark Hampton completes or defaults on his obligation, under the terms of the agreement all claims arising out of the litigation are stayed. By the agreement the parties signed, the only event that could trigger plaintiffs' right to assert their claim for reimbursement of their 1995 corporate taxes is a default on the part of Mark Hampton. Whether Mark Hampton will default is an uncertain event; thus the plaintiff's claim for reimbursement for their corporate tax liability is subject to a suspensive condition.
Under the particular facts of this case, we decline to affirm the trial court's dismissal of the motion to enforce the terms of the agreement based on the doctrine of res judicata. To do so could be construed as giving a preclusive effect to plaintiffs' claims regarding the corporate tax issue, which have been stayed pursuant to the parties' agreement. At no time did plaintiffs assert Mark Hampton had defaulted on payment of his obligation. Thus, plaintiffs have not alleged any grounds under which they would be entitled to the relief they requested under the terms of the agreement. Under the facts presented, the appropriate resolution should have been a mere denial of the plaintiffs' motion to enforce the terms of the agreement.

Dismissal
This agreement contains conditions regarding the term of performance of the contract. Our reading of the agreement indicates that if Mark Hampton follows the schedule of payments of the buy out agreement, his obligation will be fulfilled under the contract in 78 months from October 1, 1995, provided he does not complete payment at an earlier date. The fulfillment of Mark Hampton's obligation triggers one of the plaintiff's obligations, which is dismissal of the litigation. Until Mark Hampton fulfills his obligation to the satisfaction of the trial court, dismissal of the underlying litigation is improper because it unfairly deprives the plaintiffs of the opportunity to pursue all of their claims in the event Mark Hampton defaults on the buy out payments.
Clearly the January 30, 1996 agreement did not contemplate the end of litigation if the parties were still negotiating and changing the terms. Moreover, the agreement contemplates the execution of further documents which would dismiss the litigation provided there is no default. We consider the January 30, 1996 agreement not a settlement, but an agreement to settle, with the settlement to be perfected upon completion of the conditions contained in the agreement.
There was no pending motion by either party to dismiss the litigation. There is no final settlement because the terms of the agreement have not been fulfilled. One of the penalties for default included the plaintiffs' rights to pursue all claims. There is, however, no allegation of a default of the obligations provided in the January 30, 1996 agreement. These claims cannot be dismissed until the terms of the agreement have been fulfilled or default has occurred.

CONCLUSION
For the above and foregoing reasons, we deny the plaintiffs' motion to enforce the terms of the settlement agreement. The ruling of the trial court granting Mark Hampton's peremptory exception raising the exception of res judicata is reversed. Further, we reverse the decision of the trial court dismissing the entire lawsuit and reinstate the stay order as agreed upon by the parties, which is contained in the agreement. All costs of this appeal are assessed to William J. and Cynthia S. Hampton.
REVERSED AND RENDERED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] By joint motion for and judgment of dismissal, filed into the court record on October 9, 1995 and signed by the court on October 18, 1995, Mitsubishi Motor Sales of America was dismissed without prejudice.
[3] Judge Sanders incorrectly referred to Jerry Hampton as Jerry Hamilton. There is no party to the litigation by the name of Jerry Hamilton.