KEVIN M. PLAISANCE, M.D.
v.
CRAIG M. LANDWEHR, M.D., WALTER A. SCHEUERMANN, JR., M.D., WAYNE E. BREEN, M.D., AND DOCTORS FOR WOHEN MEDICAL CENTER, L.L.C.
No. 2007 CA 1998.
Court of Appeal of Louisiana, First Circuit.
June 11, 2008.
Not Designated for Publication.
RICHARD G. DUPLANTIER, Jr., STEPHEN J. MOORE, GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, Attorneys for Plaintiff/Appellant Kevin M. Plaisance, M.D.
JOHN M. OUBREUIF, DAIGIE, FISSE & KESSENICH, P.L.C., Attorney for Defendants/Appellees, Craig Landwehr, M.D., Walter A. Scheuermann, Jr., M.D., and Wayne E. Breen, M.D., Individually and d/b/a Doctors for Women Medical Center, L.L.C.
Before: PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
Kevin M. Plaisance, M.D. appeals a judgment sustaining a motion for partial summary judgment filed by defendants Craig M. Landwehr, M.D., Walter A. Scheuermann, Jr., M.D., Wayne E. Breen, M.D., and Doctors for Women Medical Center, L.L.C. (Doctors for Women). Because we conclude that this court lacks subject matter jurisdiction over this appeal, we dismiss the appeal.

BACKGROUND
This suit arises out of the termination of a business arrangement between Dr. Plaisance and the defendant physicians. Dr. Plaisance claimed in his petition that he participated with the other physicians in an obstetrics/gynecology practice known as Doctors for Women, but was informed after several years that his services were no longer desired. Dr. Plaisance alleged that the defendants' actions caused him financial losses and damage to his personal, medical, and business reputation and goodwill.
Following some discovery, the defendants moved for a partial summary judgment declaring that Dr. Plaisance was not a member of Doctors for Women prior to his voluntary separation from the practice in October 2003, and that no partnership was established between Doctors for Women and/or its members and Dr. Plaisance. The motion was supported with an "Operating Agreement" for Doctors for Women executed by Drs. Landwehr, Scheuermann, and Breen in January 2001, in which they were designated as managers and members of Doctors for Women. An "Extract of Operating Agreement" was also executed by the three physicians and by Dr. Plaisance, which stated that Drs. Landwehr, Scheuermann, and Breen were the sole members and owners of one hundred percent of Doctors for Women and that they were its duly appointed managers. This document further stated that Dr. Plaisance was "an associate physician affiliated with the company." The motion was also supported by affidavits from the three physicians and their accountant, copies of certain correspondence related to the circumstances under which Dr. Plaisance left the practice, and a copy of the Doctors for Women filing data from the Louisiana Secretary of State's office. Dr. Plaisance opposed the motion, supporting his opposition with his own affidavit and the depositions of the other three physicians.
After considering the motion, the memoranda of both parties, the evidence, and oral argument, the court granted partial summary judgment in favor of the defendants, stating that Dr. Plaisance was not a member of Doctors for Women prior to his voluntary separation from the practice in October 2003, and that no partnership was established between Doctors for Women and/or its members and Dr. Plaisance. The judgment dismissed Dr. Plaisance's claims that he was a member or partner of Doctors for Women and/or its members. Without providing any analysis or reasons, the court designated the partial summary judgment as final, finding "that there is no just reason for delay." This appeal followed.

JURISDICTIONS
Although the trial court granted the motion to certify the partial summary judgment as a final judgment subject to appeal, the trial court did not provide its own analysis or reasons for the certification. Thus, under the principles enunciated in R. J. Messinqer, Inc. v. Rosenblum, 04-1664 (La. 3/2/05), 894 So.2d 1113, 1122-23, we must review the propriety of the certification, on which our jurisdiction to hear the appeal is based, before we may address the merits of the appeal. Baldwin v. Board of Sup'rs for Univ. of Louisiana Sys.. 06-0961 (La. App. 1st Cir. 5/4/07), 961 So.2d 418, 420.
Whether a partial judgment is appealable is determined by examining the requirements of Louisiana Code of Civil Procedure article 1915. See LSA-C.C.P. art. 1911; Motorola, Inc. v. Associated Indem. Corp., 02-1351 (La. App. 1st Cir. 10/22/03), 867 So.2d 723, 725-26 (en banc).
Louisiana Code of Civil Procedure article 1915 provides, in pertinent part:
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal.
The trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay. However, if no reasons are given, but some justification is apparent from the record, the appellate court should make a de novo determination of whether the certification was proper. Messinqer, 894 So.2d at 1122. The following list of factors, although not exclusive, may be used when considering whether a partial judgment should be certified as appealable:
1) The relationship between the adjudicated and unadjudicated claims;
2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and
4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
Id.
There are many claims still to be litigated in this case. Dr. Plaisance alleged that he was "abruptly terminated," impacting his ability to practice medicine and provide quality care to his patients; that he was prohibited from obtaining patient medical records needed to provide ongoing medical care to his patients and to collect outstanding accounts receivable; that his personal and business mail was opened and some of it returned to senders, including a letter containing his medical license renewal information, causing his license to lapse; that he was not paid or given an accurate accounting based on the defendants' collections of his accounts receivable; that those collections were performed incorrectly or not at all; that his initial investment of nearly $40,000 in the practice was not repaid; and that he was due 25% of the company assets. The only claim based on his status as a member or partner is the claim for 25% of the company assets. The remaining claims are not dependent on his being a "member" of Doctors for Women and can still be pursued, based on his position as an "associate physician affiliated with the company." The elimination of the "membership" issue will not significantly affect the time needed to try the remaining issues, nor is there any overlap between the claim based on membership and the other claims.
Also, it is unlikely that the trial court will have to re-visit this issue a second time. The record included two documents clearly stating that only Drs. Landwehr, Scheuermann, and Breen were members in and owners of Doctors for Women and that Dr. Plaisance was an "associate physician affiliated with the company." Dr. Plaisance and the other three physicians signed the document that described his position in the medical practice as an "associate physician." However, he claimed there was a verbal agreement among the four doctors that he was actually a member of Doctors for Women, but could not acknowledge that position in writing due to a non-compete clause in his contract with Ochsner Hospital. A contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art. 2045; Hampton v. Hampton, Inc., 97-1779 (La. App. 1st Or. 6/29/98), 713 So.2d 1185, 1189. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; Hampton, 713 So.2d at 1189. In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Hampton, 713 So.2d at 1189. Because the wording of the Operating Agreement and Extract of Operating Agreement was clear and explicit, neither the trial court nor this court could allow parol evidence to vary the terms of those documents. Therefore, it is not likely that this issue will need to be addressed again or will delay the course of this litigation.
For these reasons, we conclude the trial court erred in designating this partial summary judgment as a final judgment. Because only a final judgment may be appealed, this court has no jurisdiction over this appeal and must dismiss it.

CONCLUSION
We hereby dismiss this appeal and assess its costs to Dr. Plaisance.
APPEAL DISMISSED.
DOWNING, J., concurs
I would dissent because I do not find any abuse of discretion by the trial court in certifying this partial summary judgment as final. However, I am concurring because I respect my panel members, and the jurisprudence on partial final judgments has not been developed.
The trial judge is in the best position to decide when an issue would shorten the time of trial, reduce delay, etc. The Supreme Court has recognized:
(T)he District Court may, by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions. The timing of such a release is, with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay. With equally good reason, any abuse of that discretion remains reviewable by the Court of Appeals. (Emphasis added.)
Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 900-01 (U.S. 1956)
In this particular case, I am of the opinion that questions of fact exist because summary judgment is rarely appropriate where, as here, a question of intent is involved. The trial judge should weigh the credibility of the witnesses. By reversing the summary judgment, the trial court could properly determine credibility of the witnesses at trial. The result of our decision today is that, if, on appeal later, the appellate court determines that the motion for summary judgment on this issue was incorrect, it will have to remand to retry this case so that the trial court can determine the credibility of the witnesses.