LOTTINGER, Chief Judge.
This appeal concerns a declaratory judgment action in which plaintiff, Louisiana Intrastate Gas Corporation (LIG), seeks a determination of its rights and obligations, under a statewide gas purchase contract, vis-a-vis an assignee of the original party to the contract, defendant and plaintiff-in-reconvention, Martin Intrastate Gas Company (MIG), and intervenor, Martin Exploration Company (MECO), respectively. The trial court found in favor of MIG, declaring that the contract was validly assigned to it and determining MiG’s various rights as seller under the contract, as well as the pricing for gas tendered under the contract. The trial court also dismissed MECO’s intervention in which it sought to be declared the owner of rights MIG claimed, in its reconventional demand against LIG. LIG and MECO appeal this judgment.
PACTS
The pertinent facts, laid out in a voluminous record, are these.
In 1978, LIG and MECO began negotiations toward completion of gas purchase contracts that would cover gas production from specific, developed properties (lands and leases) in Louisiana owned by MECO. Roy Johnson, LIG’s representative, planned to meet with Ken Martin, MECO’s president, to sign the already-prepared contracts he brought with him from Alexandria.
Once at MECO’s offices, Johnson encountered a number of other men representing other parties, or MECO, in various capacities. Johnson learned that Martin wanted to negotiate a statewide gas purchase contract in which MECO could commit to LIG’s pipeline not only the gas from its developed properties, but all gas production from its present and future-acquired properties within Louisiana. The men then began an all-night negotiation session during which the specifies of the contract at issue were settled upon.
Once signed by LIG and MECO, the parties continued their businesses, separately and together, until MECO entered bankruptcy in 1982, after the collapse of gas prices in 1981. In 1986, while still in bankruptcy, all of MECO’s assets, including the statewide contract, were transferred to Wells Fargo Bank, MECO’s main creditor, via Wells-Fargo’s nominee, ATC Realty Eight, Inc. Then, in 1988, ATC and Wells Fargo assigned the contract to MIG, a company formed by Ken Martin to exploit the dormant statewide contract.
Paragraph 11.3, the only provision concerning assignment, of the contract’s general terms and conditions allowed for assignment of the contract as follows:
This contract shall be binding upon and inure to the benefit of the heirs, legal representatives, successors and assigns of the respective parties hereto, but only to the extent of the interest in the property assigned, and shall be binding upon any purchaser of Buyer’s [LIG] transmission system and upon any purchaser of the properties of Seller [MECO] which are subject to this Contract.
However, the assignment specifically reserved to Wells Fargo the properties previ *666 ously owned by MECO, which was still in bankruptcy. MIG received only those rights, if any, that Wells Fargo possessed in the contract as MECO’s assignee, independent of the properties committed to the contract.
Ken Martin did not view this as a problem, believing that he could solicit other producers to sell their gas to LIG, at pre-crash prices, under the broad language of the contract describing the available commitment of gas to LIG. Martin wrote to LIG, and its then owner Tenneco, expressing his intent to exploit the contract by acquiring the right, from third party producers, to broker then-gas for sale to LIG.
LIG and Tenneco immediately took the position that Wells Fargo’s assignment of the MECO contract to MIG was invalid, or at least did not convey any enforceable rights to MIG, because MIG did not receive any of MECO’s properties in the assignment. LIG and Tenneco based their interpretation of the parties’ rights on the clause, in paragraph 11.3, “but only to the extent of the interest in the property assigned” which, LIG contends, restricts enforcement of contractual rights to an assignment of MECO properties.
As the parties’ positions became solidly divergent, LIG decided to file suit against MIG to have the latter’s rights declared unenforceable. Tenneco, in an effort to protect itself as the contractual indemnitor of LIG under the statewide contract, purchased MECO out of bankruptcy, in 1991, and MECO then intervened in the suit to have the assignment declared invalid as a breach of the fiduciary duties Ken Martin owed to it, as a corporate officer, while it was in bankruptcy. Tenneco took these extraordinary measures because the value of the gas MIG wanted to tender to LIG was, allegedly, “about $5 billion.”
The trial court found that the “but only” clause of the contract was ambiguous and then relied upon extensive parol evidence to find that the clause did not restrict enforcement of the contract’s rights to an assignment of MECO’s properties. The court found that the phrase meant only that an assignee took no more than he was intended to receive in the assignment.
The court then determined MiG’s other rights under the contract, restricting the available commitment of gas to that in which MIG owned an interest, rather than allowing it to simply broker gas as Ken Martin wanted to do. The practical difference, however, between the two means of tendering gas to LIG is negligible given that MIG need only acquire a minute ownership interest, along with the right to sell for the third party producer, in order to commit the producer’s gas to the contract.
Further, the trial court determined the pricing structure for the sale of gas under the contract, and dismissed MECO’s intervention by which it sought to have the contract adjudicated to it.
ASSIGNMENTS OF ERROR
For its part, LIG assigns as error the following:
1. The trial court erred when it concluded that the Contract between LIG and MECO was freely assignable, and that rights under that Contract had in fact been assigned to MIG. Specifically, the trial court erred:
a. In failing to hold that the very nature of the Contract precluded the assignment of MECO’s open-ended contractual rights;
b. In refusing to hold, based on the unambiguous terms of the Contract, that an assignee’s rights will extend only to those properties in which MECO had owned an interest; and
c. In concluding that the parol testimony at trial establishes the absence of any limitation on the assignability of the Contract.
2. The trial court erred when it concluded that the “Seller” need only possess a nominal financial, contractual, or other interest in gas properties in order to sell gas from those properties under the Contract. Instead, the terms of the Contract, the parties’ contract negotiations, and settled legal principles all establish that the Seller was authorized to sell gas only from those properties which it had actively acquired, explored, and developed.
*667 3. The trial court erred when it concluded that the definition of “Tuscaloosa Trend” in the 1980 Sohio Release was intended to convey a geological meaning, where the express definition of that term in the release itself and the trial evidence establish that the term was intended to convey a geographical meaning.
4. The trial court erred in refusing to find that the sale of 100 percent of MiG’s stock to another concern, after this litigation had been commenced and MIG had filed an Answer and Reconventional Demand, constituted the sale of a litigious right which entitled LIG to litigious redemption.
For its part, MECO assigns as error the following:[1]
1. Where a contract to sell certain gas defines the available gas as that produced from the seller’s future-acquired, undeveloped lands and leases, and where the contract expressly limits its assigna-bility to particular properties which are assigned by the seller, is the contractual commitment of gas inherently personal to the seller, and therefore not assignable to others without the consent of the buyer?
2. Where a corporate officer engages in self-dealing for a secret profit with knowledge acquired in his fiduciary capacity, and where the officer conceals the entire transaction from the corporation, is the corporation entitled to recover property received by the officer in breach of his fiduciary duty? If so, can the officer block the recovery by the ruse of causing the property to be placed in a new shell corporation controlled entirely by him?
3. Where a corporate officer sells a corporate asset of uncertain value, is the officer (rather than the corporation) entitled to keep the payment because he, rather than other corporate officers, first saw the value of the asset and arranged its sale? If not, does the corporation lose its right of action against the officer because the identity of the corporation’s stockholders may have changed?
DISCUSSION
The law of contract interpretation is comprehensively set forth in Investors Associates Ltd. v. B.F. Trappey’s Sons Inc., 500 So.2d 909, 912 (La.App. 3rd Cir.), writ denied, 502 So.2d 116 (La.1987):
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. The aim of contract interpretation is the discernment of a compatible meaning to all provisions of an agreement. Louisiana contracts are to be interpreted in light of the common intent of the parties, and in light of all of the provisions, so that each provision is given the meaning suggested by the contract as a whole. In ascertaining the common intentions of the parties to the contract, recourse must first be obtained by construing the contract or agreement as a whole; if that process is not determinative, then the next subject of inquiry is the discernment of the circumstances surrounding the parties at the time of contracting. Contracts, subject to interpretation from the instrument’s four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law. The use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. (Citations omitted).
*668 Further, and citing Investors with approval, the Louisiana Supreme Court has stated that:
When the meaning of the words are clear then the courts should look no further in determining the intent of the parties. Where the meaning of a contract is to be determined solely from the words upon its face, without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court’s findings. (Citations omitted).
Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
We have first, therefore, read the statewide gas purchase contract without the aid of parol evidence, reading each provision in light of the others, and have reached the inescapable conclusion that the contract is not ambiguous. The dictates of grammar defy the trial court’s findings that the contract, specifically paragraph 11.3, is ambiguous, and that it may be enforced without an assignment of those properties originally committed to the contract, or obtained subsequently from MECO as it acquired properties and committed those eligible properties to the contract.
As seen above, the paragraph regarding assignment stands alone in speaking of assignment and where it does so, it qualifies its statement by limiting the benefits of the contract “to the extent of the interest in the property assigned.” (Emphasis added). Therefore, without an assignment of a property, or any property, the benefits inuring to assigns are unenforceable.
We are confirmed in our reading of this provision because the paragraph twice, additionally, ties the assignment of the contract to properties assigned or transferred to other parties. The contract follows LIG’s pipeline which is a property. It also attaches to any subject properties purchased from MECO.
We categorically reject the trial court’s finding that the “but only” phrase in paragraph 11.3 means “that the assignee takes that which the assignor intends to assign and which the assignee intends to receive and nothing more.” We are unable to fathom by what reasoning a textual reading of the questioned provision could be said to disclose such a meaning. The trial court, therefore, committed legal error in interpreting this contract, and its judgment must be reversed.
Our findings in this regard obviate consideration of MECO’s assignments of error/issues presented for review, as well as LIG’s remaining assignments of error because all of the issues raised in these assignments are moot.
CONCLUSION
Therefore, for the above and foregoing reasons the judgment of the trial court is REVERSED, and Louisiana Intrastate Gas Corporation and Martin Exploration Company are declared to be the only parties holding rights under the statewide gas purchase contract. Costs are assessed equally to the appellants.
REVERSED AND RENDERED.

. MECO merges its assignments of error with the issues it alleges are presented for review, despite the inability of such a practice to specify the provisions of the judgment rendered which MECO challenges. A reading of these assignments reveals that they are merely a broad, unfocused attack upon the analysis engaged in by the trial court that cannot identify which of the paragraphs or numbered parts of the trial court’s judgment MECO wants reversed or modified. Answering yea or nay to any of the questions enumerated will not point this court to one part of the judgment any more than another. Further, this kind of cumulation ignores the language of Uniform Rule 2-12.4 which calls, first, for an assignment of errors relied upon and, secondly, for the issues presented for review. These are two distinct elements of an appellant’s brief. Nevertheless, we will list MECO’s "assignments” even though our resolution of this case does not require us to pass on any of these “issues.”