699 So.2d 1182 (1997)
Melissa A. FREEMAN, Plaintiff-Respondent,
v.
MINOLTA BUSINESS SYSTEMS, INC., et al., Defendant-Applicant.
No. 29655-CW.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
*1183 Cook, Yancey, King & Galloway by Julia Elizabeth Blewer, Bryce J. Denny, Shreveport, for Minolta Business Systems, Inc.
Davidson, Nix, Jones & Askew by Allison A. Jones, Grant E. Summers, Shreveport, Jones, Mitchell & Burch by Tracy Ann Burch, for Melissa A. Freeman.
Eskridge E. Smith, Jr., Bossier City, for Charles Hortman.
Before STEWART, GASKINS and CARAWAY, JJ.
Gaskins, Judge.
The plaintiff, Melissa A. Freeman, filed claims of sexual harassment, discrimination, retaliation and respondeat superior against the defendants, Minolta Business Systems, Inc., Minolta Corporation and her supervisor, Charles Hortman. The trial court denied the defendants' motion to compel arbitration of these claims. The defendants filed a writ application in this court seeking supervisory review of the trial court ruling. This court *1184 granted Minolta's writ application, ordered that the matter be submitted to arbitration and remanded for further proceedings.
Following our denial of Ms. Freeman's application for rehearing, she applied for writs to the Louisiana Supreme Court. That application was granted and the Louisiana Supreme Court remanded to this court for briefing, argument and a full opinion. For the following reasons, we reaffirm our prior decision on the writ grant, finding that Ms. Freeman's employment contract requires that her claims be submitted for arbitration. Accordingly, we reverse the trial court ruling denying Minolta's motion to compel arbitration and remand for further proceedings.

FACTS
The plaintiff was hired by Minolta Systems, Inc. and Minolta Corporation (collectively referred to as Minolta) as a regional sales representative on March 21, 1995. She claims that she was subjected to continuous sexual and physical abuse and harassment by her supervisor, Charles Hortman. She alleged in her petition numerous instances of egregious behavior by Mr. Hortman, claiming that she resisted his conduct. She also asserted that Minolta knew of the propensity of Mr. Hortman to sexually harass employees. The plaintiff contended that she complained to management, but that Minolta failed to take appropriate action to eliminate a hostile working environment. She claims that Minolta retaliated by making her complaints public, while telling her not to talk about the situation. She also claims that Minolta withheld from her legitimately earned commissions. Ms. Freeman further asserted that other male employees were warned to mind their "P's and Q's" around her, resulting in her alienation at the office and the creation of a hostile work environment. She asserted that her work environment is intolerable and fears that the retaliation may result in the termination of her employment. She claimed entitlement to damages under state law and under Title VII of the Civil Rights Act of 1964. The plaintiff stated in her petition that she would pursue relief under Title VII in federal court after the completion of an investigation by the Equal Employment Opportunity Commission.
On July 26, 1995, Minolta removed the case to federal court, arguing that the plaintiff's allegations of entitlement to damages under Title VII was the assertion of a federal question, giving the federal court original jurisdiction. While in federal court, Minolta also filed a motion to compel arbitration under the Federal Arbitration Act, claiming that in her employment contract, Ms. Freeman agreed to submit all claims against Minolta to arbitration. On December 18, 1995, the federal court found that the plaintiff's reference to an intention to assert a federal claim under Title VII of the Civil Rights Act of 1964 is not the actual assertion of a federal claim. Therefore, the federal court ruled that it lacked a jurisdictional basis to consider the pending motion to compel arbitration and remanded the action to state district court.
In state court, Minolta again urged its motion to compel arbitration. The plaintiff opposed arbitration, arguing that employment contracts are exempt from coverage under the Federal Arbitration Act and the Louisiana Arbitration Act, that the current lawsuit does not fall within the scope of the arbitration clause of the contract signed by the plaintiff and that the arbitration clause is not enforceable. She argued that the contract was not enforceable because it was adhesionary and she was pressured to sign on her first day of employment with no time to review the contract. She also alleged that her signature was fraudulently obtained because a Minolta employee erroneously told her that the agreement merely prevented her from divulging trade secrets when she left the company.
On November 12, 1996, the trial court denied Minolta's motion to compel arbitration. The court reasoned that the plaintiff's lawsuit does not fall within the scope of the arbitration clause of her employment contract. The trial court noted that the agreement signed by the plaintiff provides that arbitration is required to resolve a claim for "any violation of a term or condition of the employee's employment." The court found that, in this suit, the plaintiff does not claim a *1185 violation of a term or condition of her employment, but instead her claims are based on alleged violations of statutory law prohibiting certain conduct in the workplace. Based upon its finding that the arbitration clause does not encompass the dispute presented in this case, on December 4, 1996, the trial court signed a judgment denying Minolta's motion.
Minolta filed a writ application seeking exercise of this court's supervisory jurisdiction which was granted on January 16, 1997. We found that the employment contract mandates that claims under the contract or in law shall be submitted for binding arbitration. The motion to compel arbitration was granted and the matter was remanded to the trial court for further proceedings in light of this court's ruling.[1] On February 21, 1997, this court denied Ms. Freeman's application for rehearing.
The plaintiff then filed a writ application with the Louisiana Supreme Court. On May 9, 1997, that court granted the writ and remanded the matter to this court for briefing, argument and full opinion. Minolta argues that the trial court erroneously denied its motion to compel arbitration in this matter. Minolta contends that the Federal Arbitration Act (FAA or Act) applies to this case, that arbitration is required by the clear terms of the employment contract and that any claims that the plaintiff has concerning the validity of the employment contract are to be decided by the arbitrator and not the court.

APPLICABILITY OF THE FEDERAL ARBITRATION ACT
The arbitration clause at issue in this case provides as follows:
In the event that the employment of Employee is terminated, and Employee contends that such termination was wrongful or was otherwise in violation of an implied condition, term or condition of employment or in the event that Employee maintains that during the course of employment of Employee, MBS is or was in violation of any term or condition of Employee's employment, whether found in fact or in law, including but not limited to acts or conduct in violation of this Agreement or otherwise (hereinafter collectively referred to as a "Claim"), Employee and MBS agree that Employee's exclusive remedy to resolve any such Claim shall be to submit such Claim, to binding arbitration pursuant to the provisions of the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) if applicable, or pursuant to the provisions of the applicable civil arbitration act of the state in which employee is employed by MBS, if the Federal Arbitration Act does not apply to Employee's employment.... [Emphasis supplied.]
Minolta argues that the FAA, contained in 9 U.S.C. §§ 1-15, is applicable in this case. The purpose of the Act was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts and to place arbitration agreements on the same footing as other contracts. The provisions of the FAA manifest a liberal federal policy favoring arbitration agreements. Gilmer v. Interstate/Johnson Lane Corporation, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); Volt Information Services v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). If an arbitration agreement is within the coverage of the FAA, its provisions are applicable in state as well as federal courts. Atlantic Aviation, Inc. v. EBM Group, Inc., 11 F.3d 1276 (5th Cir.1994).
The FAA provides in 9 U.S.C § 2 that:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction, or the refusal to perform the whole of any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall *1186 be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
"Commerce" in this provision is broadly construed. Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corporation, 797 F.2d 238 (5th Cir.1986): Atlantic Aviation, Inc. v. EBM Group, Inc., supra. No one contested that Minolta is a foreign corporation doing business in this state and its products cross state lines. Consequently, this provision of the FAA is satisfied in this case.
Ms. Freeman argues that the FAA does not apply to this arbitration agreement because employment contracts are exempt from coverage under the Act.[2] The FAA provides in 9 U.S.C. § 1 that "[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." In contrast to the rules of construction governing § 2 of the FAA, federal jurisprudence construing § 1 overwhelmingly provides that this provision is to be narrowly construed to exclude only the employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are. Rojas v. TK Communications, Inc., 87 F.3d 745 (5th Cir.1996); Cole v. Burns International Security Services, 105 F.3d 1465 (D.C.1997); Asplundh Tree Expert Company v. Bates, 71 F.3d 592 (6th Cir.1995); Patterson v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir.1997). Only the federal fourth circuit has chosen to apply the statute broadly to exclude all types of employment contracts. See United Electrical, Radio & Machine Workers v. Miller Metal Products, 215 F.2d 221 (4th Cir.1954). In the present case, Ms. Freeman, employed as a sales representative for Minolta, has failed to demonstrate that her position involves the transportation of goods in interstate commerce in the manner of a seaman or a railroad worker. We also note that the explicit terms of the arbitration clause in this case call for the application of the FAA. Therefore, because we find that application of the FAA is not precluded under §§ 1 or 2 of the Act and because the arbitration clause in this case specifically calls for application of the Act, we apply the principles of the FAA to this case.

CONSTRUCTION OF THE AGREEMENT
Minolta argues that the trial court erred in finding that the scope of the arbitration provision in this case did not include resolution of claims founded in statutory law, such as those advanced by the plaintiff in this case. We find that this argument has merit.
Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate. First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claim unarbitrable. Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Perez & Associates v. Welch, 960 F.2d 534 (5th Cir.1992).
As stated above, the arbitration clause in Ms. Freeman's employment contract provides that a claim is to be submitted to binding arbitration "in the event the Employee maintains that during the course of employment of Employee, MBS is or was in violation of any term or condition of Employee's employment, whether found in law or in fact, including but not limited to acts or conduct in violation of this Agreement or *1187 otherwise (hereinafter collectively referred to as a `Claim')." The issue is whether Ms. Freeman's claims of sexual harassment, discrimination, retaliation and respondeat superior can be construed as alleging that Minolta was in violation of a term or condition of her employment, in fact or in law.
Ms. Freeman's claims against Minolta include the creation of a hostile work environment and retaliation by withholding from her commissions duly earned. This court has held that, in order to make a prima facie case for hostile work environment, the employee must assert and prove that: (1) she belonged to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on gender; (4) the harassment affected a term, condition or privilege of employment; and (5) respondeat superior. Lebeaux v. Newman Ford, Inc., 28,609 (La.App.2d Cir. 9/25/96), 680 So.2d 1291; Spears v. Rountree Oldsmobile-Cadillac Co., 26,810 (La.App.2d Cir. 4/5/95), 653 So.2d 182. See also Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Therefore, in order to prove her claim of a hostile work environment, the plaintiff will have to prove that a term, condition or privilege of her employment was affected by Minolta. Ms. Freeman argues that because the statute requires her to show a term or condition of her employment was affected, and the arbitration clause requires that a term or condition of employment be violated, that the arbitration clause should not apply. We find that in this case the terms represent a distinction without a difference. In addition, Ms. Freeman claims that commissions were withheld in retaliation for her sexual harassment complaint. This allegation goes directly to a violation by Minolta of a term or condition of her employment.
We note that the arbitration clause contains broad language evincing coverage of claims "including but not limited to acts or conduct in violation of the agreement or otherwise." We construe this language to further include coverage of the claims raised by Ms. Freeman. Therefore, we find that the plaintiff's claims involve violation of a term or condition of her employment and are included in the scope of the arbitration clause of her employment contract.
Ms. Freeman argues that the arbitration clause is ambiguous and that ambiguity in a contract is to be construed against the maker under La. C.C. art.2056. The issue of the conflict between state law on the construction of contracts and the federal policy favoring arbitration was considered in McKee v. Home Buyers Warranty Corporation II, 45 F.3d 981 (5th Cir.1995). In that case, the plaintiffs argued that an arbitration agreement was ambiguous, and under the Louisiana law dealing with contract interpretation, ambiguities should be construed against the drafter. The United States Fifth Circuit Court of Appeals reasoned that, in construing an arbitration agreement within the scope of the FAA, the parties' intentions control, but those intentions are generously construed as to the issue of arbitrability. The court went on to state that the FAA creates a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act. The body of federal law requires that, in applying general state law principles of contract interpretation to an agreement within the scope of the Act, due regard must be given to federal policy favoring arbitration and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration. As discussed above, we do not find that the arbitration clause in this case is ambiguous. However, under McKee, any ambiguity will be resolved in favor of arbitration.
Ms. Freeman argues that her claims of sexual harassment, discrimination, retaliation and respondeat superior are based upon statutory rights in La. R.S. 23:1006, 51:2264 and 51:2256, and that the employment contract does not satisfy requirements established by the United States Supreme Court in Gilmer v. Interstate/Johnson Lane Corporation, supra, for the arbitration of statutory rights. Federal jurisprudence provides that statutory claims such as sexual harassment or age discrimination may be subject to arbitration if the parties so agree. Gilmer v. Interstate/Johnson Lane Corporation, supra; Alford v. Dean Witter Reynolds, Inc., 939 F.2d *1188 229 (5th Cir.1991); Rojas v. TK Communications, supra; Willis v. Dean Witter Reynolds, 948 F.2d 305 (6th Cir.1991); Patterson v. Tenet Healthcare, Inc., supra. Gilmer addressed whether a claim under the Age Discrimination in Employment Act of 1967 (ADEA) could be subjected to compulsory arbitration. In holding that statutory claims may be the subject of an arbitration agreement enforceable pursuant to the FAA, the court found that, by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial forum. The Court noted that generalized attacks on arbitration rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants and as such, they are far out of step with the Court's current strong endorsement of the federal statutes favoring this method of resolving disputes.
In Gilmer, the plaintiff raised numerous objections to the adequacy of arbitration procedures. He argued that the arbitrator may be biased, that the discovery allowed in arbitration is more limited than in federal courts, that often there is no written opinion in arbitration, that arbitration does not provide for broad equitable relief or for class actions and that there is unequal bargaining power between employers and employees in arbitration. The Supreme Court discounted each of the plaintiff's objections to find that arbitration of the plaintiff's statutory claim of age discrimination was proper.
Gilmer was applied in Cole v. Burns International Security Services, supra. In that case, the plaintiff, asserting an employment discrimination claim, challenged the enforceability of conditions of employment requiring individuals to arbitrate claims resting on statutory rights. Based upon factors in Gilmer, the court in Cole found that the statutory claim could be submitted to arbitration where there were neutral arbitrators, where more than minimal discovery would be provided for, where a written award would be made, and where the agreement provides for all types of relief that would otherwise be available in a judicial forum. The court in Cole also found that an employee cannot be required to pay unreasonable costs or to pay any of the arbitrator's fees.
Ms. Freeman argues that the arbitration clause in this case does not provide for discovery or for a written award and that the relief to be given under the arbitration agreement is limited under paragraph six of the employment contract to a wage based remedy rather than damages as provided under Louisiana law. She contends that, because the agreement does not allow her to collect damages as she would under state law, the arbitration clause should not be applied for resolution of her statutory claim.
Gilmer did not specifically hold that an agreement to arbitrate a statutory claim will not be valid unless the various factors are spelled out in the arbitration agreement. In the present case, the agreement is silent regarding the issues of discovery and a written award. However, the plaintiff has failed to show that she would be deprived of these factors in arbitration.
As to the relief available to the plaintiff in arbitration, paragraph 6 of the plaintiff's employment contract provides:
Employee agrees and understands that the arbitration procedures set forth in paragraph 5 hereof shall be the sole and exclusive forum for the resolution of any Claim. In the event that MBS does not receive a written request for arbitration from Employee of Employee's duly authorized agent within one year from the date of termination of Employment, Employee understands and agrees that Employee shall have waived any right to raise any Claim in any forum. Employee further expressly agrees that, in connection with any dispute arising out of Employee's employment with MBS or the termination of such employment, Employee's exclusive remedy shall be a money award in an amount which shall not exceed either (1) the amount of wages Employee would have earned from the date of termination to the date upon which the arbitration hearing begins, less any interim earnings Employee may have earned, or (2) the amount of wages Employee would have received for one year from the date of the termination, *1189 less any interim earnings Employee may have had, whichever is less. It is further expressly understood and agreed by Employee and MBS that Employee shall not be entitled to any other remedy, at law or in equity, including but not limited to, the remedies, reinstatement, back pay or other money damages, punitive damages and/or injunctive relief. [Emphasis supplied.]
This provision could be construed to unlawfully limit the plaintiff's recovery to less than she would be entitled to under Louisiana's statutory scheme prohibiting sexual harassment, discrimination and retaliation. However, Minolta conceded in oral argument that the damage provision of Paragraph 6 is not specific enough to have caused a waiver of the employee's tort based remedy for sexual harassment and that the remedies provided under the contract are not intended to apply to this claim. Said another way, Minolta conceded that the plaintiff would not be held to the provisions of paragraph 6 and would not be denied the statutory relief if she proves her claims.
We also note that the contract contains a severability clause in paragraph 14 which provides that:
In the event that any provision of this Agreement shall be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms and provisions of the Agreement shall not be effected [sic] thereby, and said illegal, enforceable [sic] or invalid part, term or provision shall be deemed not to be a part of this Agreement. To the extent permitted by applicable law, Employee and MBS hereby waive any provision of law which prohibits or renders unenforceable in any respect any provision hereof.
Considering the policy greatly favoring arbitration and Minolta's concession that the provisions of paragraph 6 do not apply in this case, we find no hindrance under Gilmer to the submission of the plaintiff's claims to arbitration.

VALIDITY OF EMPLOYMENT CONTRACT
Ms. Freeman argued in the trial court that the employment contract at issue here is not valid because it was entered by fraud and coercion and under economic duress. She argues that the employment contract and the arbitration clause contained therein are not valid because they are adhesionary. She contends that there was no mutual assent because she had no right to negotiate any portion of the agreement and that she was pressured to sign the contract without reading it. She also claims that she was wrongfully induced to sign the employment contract by a Minolta employee who fraudulently represented that the document was simply an agreement not to divulge trade secrets when she left the company.
Under the elementary principles of contract law, one is presumed to have read a contract that one signs. A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it or that it was not explained or that he did not understand it. Thus, unless there is evidence of fraud, misrepresentation, or deceit, one who signs a written contract is bound by its terms. In re Cajun Electric Power Cooperative, Inc. v. Riley Stoker Corporation, 791 F.2d 353 (5th Cir.1986).
As asserted by Minolta, the plaintiff objected in the trial court to the validity of the employment contract as a whole, not strictly to the validity of the arbitration clause. Federal jurisprudence holds that if the claim is fraud in the inducement of the arbitration clause itself, an issue as to the "making" of the agreement to arbitrate, the federal court may proceed to adjudicate it. However, the statutory language does not permit the federal court to consider claims in the inducement of the contract generally. Such a claim is to be decided by the arbitrator. Prima Paint Corporation v. Flood & Conklin Mfg. Company, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270, (1967); Perez & Associates v. Welch, supra; Rojas, supra.
In the present case, the plaintiff argues that the employment contract as a whole is invalid. Therefore we find, as did the court *1190 in Prima Paint Corporation that such a claim is to be determined by the arbitrator and not the court. Therefore, we make no ruling as to the validity of the employment contract.

CONCLUSION
For the reasons stated above, we reverse the trial court judgment denying Minolta's motion to compel arbitration. We find that the arbitration clause in this case is governed by the FAA and that the provision at issue here included in its scope claims of sexual harassment, discrimination, retaliation and respondeat superior as alleged by the plaintiff, Melissa A. Freeman. We further find that the limitations regarding damages found in paragraph 6 of the employment contract are invalid, unenforceable and deemed not to be a part of the agreement in this case. Therefore, we grant Minolta's motion to compel arbitration and remand for proceedings consistent with this opinion. Costs in this court and in the court below are assessed to the plaintiff, Melissa A. Freeman.
REVERSED AND REMANDED.
NOTES
[1] Mr. Hortman separately filed a writ application which was denied for noncompliance with the Uniform Rules of Courts of Appeal (URCA).
[2] Ms. Freeman also argues that her arbitration clause is excluded from coverage under the Louisiana Arbitration Act (LAA). The LAA, set forth in La. R.S. 9:4201-4217, closely tracks the FAA. La. R.S. 9:4216 provides in pertinent part that the LAA shall not apply to "contracts of employment of labor." However, Louisiana jurisprudence holds that "labor" does not include the performance of mental tasks, managerial skills or those employees recognized generally as professional men and women. Giacona v. Conti Commodity Services, 409 So.2d 690 (La.App. 4th Cir. 1982); Wright v. Round the Corner Restaurants of Louisiana, Inc., 252 So.2d 341 (La.App. 4th Cir. 1971). Because we find that the FAA is applicable to this case, consideration of the exclusion under the LAA is not necessary. However, without making a specific finding in this regard, we note that Ms. Freeman, a sales representative, is arguably employed in a professional position.