747 So.2d 1151 (1999)
Wallace AULTMAN
v.
ENTERGY CORP.
No. 98 CA 2244.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
John S. Lawrence, Jr., Mandeville, LA, for plaintiff/appellant, Wallace Aultman.
Malcolm J. Dugas, Vincent J. Sotile, Jr., Donaldsonville, LA, for defendant/appellee, Entergy.
Thomas H. Kiggans, Susan W. Furr, Freddie Pitcher, Jr., Baton Rouge, LA, Rosemarie Falcone, New Orleans, LA, for Entergy Corp., Entergy Gulf States, Inc., Charles Gary Clary.
*1152 CARTER, C.J., LeBLANC and PETTIGREW, JJ.
CARTER, C.J.
Plaintiff, Wallace Aultman, sued Entergy Corporation, Gulf States Utilities Company, and Charles Gary Clary (defendants), alleging age discrimination in violation of the Louisiana Human Rights Act, LSA-R .S. 51:2231, et seq. The trial court granted defendant's motion for summary judgment and plaintiff appeals.

FACTS
Wallace Aultman was an employee of Gulf States Utilities Company (Gulf States) for twenty-five years. In January 1994, Entergy Corporation acquired Gulf States and Aultman became an area line supervisor in the Southern Region of the Entergy Engineering and Operations Organization. Following the acquisition of Gulf States, Entergy implemented a new evaluation process for salaried employees. This process was known as the Management Planning & Review Ranking Process (Ranking Process). Under the Ranking Process, certain employees in the Southern Region of the Engineering and Operations Organization were ranked against their peers in terms of job performance and potential.
Prior to the implementation of the Ranking Process, Aultman had been rated as an "excellent" employee. However, in 1996, Aultman was ranked against all other area line supervisors in the Southern Region of the Engineering and Operations Organization and was ranked low compared to his peers. At that time, voluntary severance packages were being offered to employees who received low rankings, in exchange for the employee signing a release of claims against Entergy. These employees also had the option of working towards improving their performance by meeting criteria set forth in individually developed action plans. Aultman asserts that the Ranking Process was a way of providing an allegedly age neutral reason to support Entergy's discriminatory decision to terminate large numbers of its older employees. At the time he received his low ranking, Aultman was 48 years old.
After evaluating his options, Aultman accepted a voluntary severance package. On April 8, 1996, Aultman signed the Employee Separation Agreement, which included a waiver of any claim of employment discrimination based on age. In exchange for signing the Employment Separation Agreement, Aultman received his regular pay through June 3, 1996; a lump sum payment of $35,558.83, less legal deductions; and continued medical, dental, and life insurance benefits subsidized by Entergy for the next eighteen months.
In January 1997, Aultman filed the present suit alleging he had been discriminated against on the basis of his age.[1] The defendants filed a motion for summary judgment on the basis that the release agreement signed by Aultman in exchange for his severance package precludes his lawsuit. Defendants further asserted Aultman was precluded as a matter of law from attacking the validity of the release agreement because he retained the money and benefits paid to him under the agreement.
On January 27, 1998, the trial court granted defendants' motion for summary judgment. In its Reasons for Judgment, the trial court assumed Aultman did not "knowingly and voluntarily" waive his rights, but determined that he ratified and/or confirmed the invalid waiver by not returning the money to Entergy prior to filing the present suit. The trial court reasoned that by failing to comply with the provisions of the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C.A. § 626(f), the release became voidable, and Aultman ratified and/or confirmed the waiver by not tendering the money back to Entergy.
*1153 Aultman field a motion for reconsideration and/or new trial. On May 15, 1998, the trial court denied the motion and amended its original reasons for judgment to delete the language pertaining to the release agreement failing to comply with the statutory provisions of the OWBPA.
Aultman appeals the trial court's granting of defendants' motion for summary judgment. Aultman asserts the trial court erred in ruling that the Louisiana Human Rights Act does not encompass the same waiver requirements as found in the federal Age Discrimination Employment Act (ADEA); and that material facts are in dispute as to the validity of the waiver in question.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966. Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 704 So.2d at 32-33.
In 1990, the United States Congress passed an amendment to the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 621 et seq., entitled the Older Workers Benefits Protection Act, (OWBPA) 29 U.S.C.A. § 626(f). The OWBPA provided requirements for an employee to waive his age discrimination claim under the ADEA.[2] Recently in Oubre v. Entergy *1154 Operations, Inc., 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) the United States Supreme Court, in an age discrimination suit filed under the federal ADEA, addressed the same issue of whether a waiver agreement executed by an Entergy employee barred a subsequent lawsuit based on age discrimination.[3]
In Oubre, the plaintiff received a severance package pursuant to a voluntary separation agreement with her employer, Entergy. Entergy obtained plaintiff's signature on a release of all claims against Entergy including age discrimination claims. After receiving her severance pay, the plaintiff filed suit against Entergy alleging age discrimination under the federal ADEA. Entergy filed a motion for summary judgment, that was granted by the district court and affirmed by the United States Fifth Circuit Court of Appeals.
However, the United States Supreme Court reversed the summary judgment on the basis that the release did not comply with the OWBPA's requirements, thus the plaintiff's ADEA claim could not be barred. Oubre, 118 S.Ct. at 842. The Supreme Court further noted that the plaintiff's retention of monies received as severance did not amount to ratification equivalent to a valid release of the ADEA claim, since retention was not a requirement under the OWBPA as a release of claims. Oubre, 118 S.Ct. at 842.
Aultman argues that the facts of his case are virtually identical to those in Oubre because he signed the same release which was found to be non-compliant with the OWBPA requirements. Accordingly, Aultman argues he should be able to maintain his age discrimination suit against Entergy. We disagree with Aultman's contention that Oubre controls the present case. Aultman's suit is not based on the federal ADEA, but on the Louisiana Human Rights Act. Thus, the question becomes whether the Louisiana Human Rights Act encompasses the requirements for a valid waiver as found in the OWBPA.
Aultman's argument that the Louisiana Human Rights Act encompasses the OWBPA is based on the following language found in the Louisiana Human Rights Act at LSA-R.S. 51:2231(A):
It is the purpose and intent of the legislature by this enactment to provide for execution within Louisiana of the policies embodied in the Federal Civil Rights Act of 1964, 1968, and 1972 and the Age Discrimination in Employment Act of 1967,2 as amended;

* * *
2 See, inter alia, 29 U.S.C.A. § 621 et seq.
(Footnote omitted.) (Emphasis ours.)
The emphasized language of the statute, which references the ADEA, was adopted and added by Acts 1988, No. 886, § 1. However, the OWBPA, 29 U.S.C.A. § 626(f) was not added to the federal ADEA until 1990, two years after the Louisiana Legislature expressed its intent to adopt the policies embodied in the ADEA. The Legislature again amended the Human Rights Act in 1997 by Acts 1997, No. 1409, § 1; however, none of the amendments referenced an adoption of the requirements of the OWBPA.
*1155 As defendants point out, it is a tenant of statutory construction that when the Legislature adopts a new law using a source statute that has already been adopted in another state or by the federal government and omits provisions of the source statute, it must be construed that the intention of the Legislature was not to adopt the omitted portion. See Simmesport State Bank v. Scallan, 134 So.2d 391, 393 (La.App. 3rd Cir.1961), and Beckham v. Hartford Accident & Indemnity Company, 137 So.2d 99, 101 (La.App. 3rd Cir. 1962). Had the Legislature intended to adopt the requirements of the OWBPA, it would have unequivocally set forth those requirements as part of the state statute.
We further note that Aultman's interpretation violates LSA-Const. art. 3, § 15(B), which states:
A bill enacting, amending, or reviving a law shall set forth completely the provisions of the law enacted, amended, or revised. No system or code of laws shall be adopted by general reference to it.
The Louisiana Human Rights Act does not set forth the requirements of the OWBPA, nor does it specify that the Legislature intended to adopt those specific requirements for waiver of claims regarding age discrimination suits. The reference to the ADEA in footnote 2 of LSA-R.S. 51:2231(A) is insufficient to adopt the OWBPA into our laws because it is merely a general citation to the described act. Absent such a directive by the Legislature, we decline to extend the requirements of the OWBPA to state law age discrimination claims. See also Comeaux v. Entergy Corporation, 98-451, p. 1 (La.App. 5th Cir 4/14/99), 734 So.2d 105, 106, writ denied, 99-1368 (La.7/2/99), 747 So.2d 21.
Defendants assert Aultman is precluded as a matter of law from attacking the validity of his waiver because he made no effort to return any of the money he received in exchange for his agreement not to sue. We agree with the jurisprudence cited by the defendants that recognizes that a party seeking to invalidate a contract based on fraud or some other theory must return whatever of value he received before seeking to have the contract set aside. See Brock v. Town of Kentwood, 196 La. 318, 199 So. 133 (1940); Vest v. Richardson, 253 So.2d 97 (La.App. 4th Cir.), writ denied, 260 La. 13, 254 So.2d 618 (1971). Because Aultman has not attempted to return any of the money he received from his severance package, we find he is barred from attacking the validity of the waiver agreement as a matter of law.

CONCLUSION
Based on our review of the record and arguments of the parties, we find that the requirements for waiving an age discrimination claim as found in the OWBPA do not apply to the present case because this case was brought pursuant to state law, and the OWBPA governs federal age discrimination waivers brought under the federal act. Further, Aultman is barred from attacking the validity of the waiver agreement due to his failure to return the monies he received. Accordingly, because Aultman cannot show the waiver agreement is invalid, we find summary judgment is appropriate. The judgment of the trial court is affirmed, and Wallace Aultman is cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] On January 14, 1997, Aultman filed a notice of involuntary dismissal of an action pending against these same defendants in the United States District Court for the Eastern District of Louisiana.
[2] 29 U.S.C.A. § 626(f)(1) provides:

(1) An individual may not waive any right to or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum
(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
(B) the waiver specifically refers to rights or claims arising under this chapter;
(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or
(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;
(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;
(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to
(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.
[3] As will be discussed infra, the case sub judice was not brought under the federal ADEA, but under state law.