808 So.2d 534 (2001)
COMMERCIAL PROPERTIES DEVELOPMENT CORPORATION
v.
The STATE TEACHERS RETIREMENT SYSTEM.
No. 2000 CA 0392.
Court of Appeal of Louisiana, First Circuit.
March 28, 2001.
*536 Charles S. McCowan, Jr., L. Victor Gregorie, Baton Rouge, for Plaintiffs/Appellees, Commercial Properties Development Corporation and Livingston, La. Commercial Properties Development Company, L.L.C.
Patricia Nalley Bowers, Herbert B. Bowers, III, New Orleans, for Defendant/Appellant, The State Teachers Retirement System of Ohio.
Before: CARTER, C.J., FOIL, and WEIMER, JJ.
*537 CARTER, Judge.
This is an appeal of two summary judgments in favor of Commercial Properties Development Corporation and Livingston, La. Commercial Properties Development Company, L.L.C. (collectively CPDC). In the first judgment, the trial court granted CPDC's motion for summary judgment finding The State Teacher's Retirement System of Ohio (OTR) liable for all payments made by CPDC for electricity expended by OTR's parking lot lights at the Livingston Square Shopping Center since December 1987. The trial court also granted CPDC's motion for summary judgment finding the amount owed by OTR was $18,975.97 plus interest from the date of judicial demand.

FACTS
This litigation centers around two adjacent tracts of land comprising the Livingston Square Shopping Center in Denham Springs, Louisiana. The first tract of land encompasses a shopping center, and also includes a parking lot with a light fixture. This tract, known as the "shopping center," was purchased by CPDC in November 1987. The second tract of land is adjacent to the shopping center and is developed only to the extent that it is a parking lot with light poles. This tract, referred to as the "parking lot," was acquired by OTR in March 1984.
The problem arose in September 1995, when CPDC determined that both the shopping center lights fixtures and the OTR parking lot light fixtures were all connected to the electric meter bearing CPDC's name (meter number 64027465). CPDC had paid for all electricity attributable to the electric meter since it acquired ownership of the shopping center in November 1987. In September 1997, CPDC had the meter rewired so that only OTR's parking lot lights were connected to that meter. However, CPDC continued to pay for the electricity used as reflected by that meter. CPDC ceased paying for the electricity utilized by OTR's parking lot lights in July 1998, after it transferred ownership of the shopping center.
According to CPDC, OTR refused amicable demand for its share of the cost of the electricity. On January 2, 1997, CPDC filed suit against OTR seeking damages equal to the amounts paid by CPDC for the electricity expended by OTR's parking lot lights since December 1987. CPDC's theory of recovery was based on unjust enrichment.
On August 28, 1997, OTR filed a motion for summary judgment seeking dismissal of CPDC's claims. OTR argued that it was not unjustly enriched in that it paid a monthly maintenance fee to its maintenance contractor, which included payment for electricity of its parking lot lights. CPDC responded by filing a cross motion for summary judgment on the issue of liability.
The trial court denied OTR's motion for summary judgment and granted CPDC's motion for summary judgment, finding OTR liable for all payments made by CPDC for the electricity expended by OTR's parking lot lights. At that time, the trial court reserved the issue of quantum for future proceedings. OTR appealed the judgment on liability, but this court dismissed that appeal on April 19, 1999.[1]
On August 4, 1998, CPDC filed a second motion for summary judgment for purposes of determining the amount of damages owed by OTR. Following a hearing, *538 the trial court granted CPDC's motion and determined OTR was liable in the amount of $18,975.97, together with judicial interest commencing on June 1, 1998.
OTR appeals the judgments of the trial court, contending that neither of the decisions regarding liability nor quantum should have been granted. OTR has also filed original peremptory exceptions raising the objections of no cause of action and prescription with this court. These exceptions are resolved in the context of our discussion of the propriety of the granting of the summary judgments.

DISCUSSION

Standard of Review
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Aultman v. Entergy Corp., 98-2244, p. 4 (La.App. 1st Cir.11/5/99), 747 So.2d 1151, 1153.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Aultman, 747 So.2d at 1153.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Aultman, 747 So.2d at 1153.

LIABILITY
The action for unjust enrichment is codified in LSA-C.C. art. 2298, which provides in pertinent part:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The root principle of unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid. See Scott v. Wesley, 589 So.2d 26, 27 (La.App. 1st Cir.1991). In Minyard v. Curtis Products, Inc., 251 La. 624, 652, 205 So.2d 422, 432 (1967), the Louisiana Supreme Court set forth five prerequisites that must be satisfied to successfully invoke the action; there must be: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment *539 and the impoverishment, and (5) no other remedy at law available to the impoverishee.
In support of its motion for summary judgment on the issue of liability, CPDC introduced: its first set of interrogatories and answers propounded to OTR; affidavits of Eugene Farrell, James Walsh, and Vandy Tullos; maintenance agreements regarding the parking lot from 1982 and 1991; and two letters from Joan Gibbons, the Asset Management Assistant of OTR to Vandy Tullos, of Tullos & Tullos Construction Company. From the evidence submitted, we find that there is no material issue of fact regarding the following elements of CPDC's claim.

OTR was enriched and CPDC was impoverished
Eugene Farrell, vice-president of CPDC, stated in his affidavit that OTR's parking lot light fixtures had been connected to CPDC's electric meter since November 1987. According to Mr. Farrell, CPDC has paid for all electricity expended by the OTR parking lot lights since November 1987. OTR claims it paid for electricity through its maintenance contractor, Walsh & Tullos Properties, Inc. (Walsh & Tullos) and/or Tullos & Tullos Construction Co., Inc. (Tullos & Tullos), (collectively referred to as "contractors") from September 1987 until November 1996. However, James Walsh, president of Walsh & Tullos, and Vandy Tullos, president of Tullos & Tullos, both stated in their affidavits that the maintenance agreements did not include payments for utilities and those companies never paid any utility bills to any utility company on behalf of OTR.
Although OTR may have thought the fees it paid to its maintenance contractors pursuant to the maintenance agreements included payment of its utility bill, no fees were ever in fact paid for OTR's parking lot lights to any utility companies by either contractor. Accordingly, we find there is no genuine issue of material fact that OTR was enriched and CPDC was impoverished because of CPDC's payment of OTR's electricity use. Moreover, there is an obvious existence of a causal relationship between OTR's enrichment and CPDC's impoverishment in that CPDC paid something that was clearly the responsibility of OTR.

Absence of justification or cause for the enrichment and the impoverishment
OTR claims the maintenance agreements bound the contractors to pay for its electricity. The maintenance agreements include the phrase, "Contractor ... shall keep ... the parking lot ... properly lighted." OTR asserts that this language bound the contractors to pay for the electrical use of OTR's lights out of the monthly maintenance fees and also provides a justification for its enrichment and CPDC's impoverishment.
In order to resolve whether there is a justification for OTR's enrichment and CPDC's impoverishment, we must examine the wording of the maintenance agreements to determine whether the contractors were bound to pay OTR's utility services. The maintenance agreements that governed the relationship between OTR and Walsh & Tullos from August 1987 until January 17, 1991, provided in pertinent part:
8. Maintenance. Contractors shall regularly inspect and keep the common area of T.G.&Y. illustrated on Exhibit "B" attached hereto, including, but not limited to, the parking lot, sidewalks and service drives in the following condition: properly lighted, clearly and properly striped for parking, clean and free of all debris including ice and snow; grass *540 shall be mowed to an attractive level, sidewalk canopy lights shall be kept in proper repair and bulbs replaced as needed.[2]
The maintenance agreement between OTR and Tullos & Tullos, dated January 18, 1991, provides in pertinent part:
4. Maintenance. Contractor shall regularly inspect and keep the common areas of the Property, including, but not limited to, the parking lot, sidewalk and service drives, in the following condition: properly lighted, clean and free of all debris including ice and snow; grass shall be mowed to an attractive level.
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing there from. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art. 2045. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art. 2046; Hampton v. Hampton, Inc., 97-1779, pp. 5-6 (La. App. 1st Cir.6/29/98), 713 So.2d 1185, 1188-89.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. LSA-C.C. art. 2046, comment (b); Hampton, 713 So.2d at 1189.
In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. Hampton, 713 So.2d at 1189.
When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art. 2045. Intent is an issue of fact, which is to be inferred from all of the surrounding circumstances. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art. 2053; Hampton, 713 So.2d at 1189. Whether a contract is ambiguous or not is a question of law. Hampton, 713 So.2d 1189-1190.
Based on our reading of the maintenance agreements between OTR and its contractors, we find that the agreements do not address the issue of payment of utilities. Moreover, we find as a matter of law that the maintenance agreements are *541 not ambiguous. The phrase relied upon by OTR that places responsibility on the contractor to keep the area well lighted cannot be considered as making the contractor responsible for payment of utilities. Accordingly, there is no justification or cause for OTR's enrichment and CPDC's impoverishment.

Existence of another remedy at law available to the impoverishee
Through its peremptory exceptions raising the objection of no cause of action and prescription, OTR argues that CPDC cannot sustain its burden of proof regarding the element that it has no other remedy available at law. OTR contends that there are other remedies available, such as the tort of trespass, or the taking of private property without just compensation, or the action for recovery of compensation for services rendered. OTR also argues that the potential tort actions are subject to a one-year prescriptive period and the action to recover compensation for services rendered is subject to a three-year prescriptive period, both of which are elapsed.
The tort of trespass occurs when there is an unlawful physical invasion of the property of another. Phillips v. Town of Many, 538 So.2d 745, 746 (La. App. 3rd Cir.1989). In the present case, we find that neither the allegation of CPDC's petition, or the evidence introduced in support of its motion for summary judgment reveals that OTR physically invaded CPDC's property. Likewise, OTR asserts that CPDC may have a cause of action for the tort of the taking of private property without just compensation. OTR again relies upon the Phillips case to support this contention. Phillips involved a lawsuit filed by two landowners against the Town of Many for damages arising from the unauthorized digging of a drainage ditch on their property. Although the Town of Many asserted the ditch was placed on the right-of-way belonging to the town, the ditch was in fact on the private property of the landowners. The Phillips court held that the landowners had causes of action in the torts of trespass and the taking of private property without just compensation.
In our view, OTR does not address how Phillips supports the existence of the tort of taking of private property without just compensation in this case. We find the present matter is centered around the uncompensated use of electricity as opposed to allegations that OTR in some way damaged or invaded CPDC's property.
OTR also asserts, without much explanation, that CPDC has a cause of action for the recovery of compensation for services rendered. In support of this, OTR relies upon LSA-C.C.P. art. 3494. However, article 3494 merely sets forth the prescriptive period. CPDC cites several cases in its brief that support its argument that there is no cause of action under this article because the cases that apply it involve recovery for compensation for personal services rendered by one party to or for another. In the present case, we note that CPDC did not actually render the electrical service. CPDC only paid for the electrical service utilized by OTR. Accordingly, we do not find that CPDC has a remedy under the recovery for compensation of services rendered.
After finding that CPDC has no other remedies available to it under the law, we decline OTR's peremptory exceptions raising the objections of no cause of action and prescription. We also find the CPDC has meet all the prerequisites to bringing an action for unjust enrichment. Moreover, after considering the evidence of record in support of CPDC's motion for summary judgment, we find there are no issues of material fact and CPDC is entitled to *542 judgment as a matter of law regarding whether OTR is liable for the amount of electricity utilized by OTR's parking lot lights from November 1987 until July 1998. Accordingly, the judgment of the trial court granting CPDC's motion for summary judgment on the issue of liability is affirmed.

QUANTUM
In support of its motion for summary judgment on the issue of damages, CPDC filed an affidavit executed by Eugene Farrell and documentation establishing the electrical usage for meter number 64027465 from December 1988 through July 1998. According to the exhibits filed by CPDC, the only lights using electricity attached to the meter were eight 1000-watt high pressure sodium lights attached to the two OTR light poles, and three 1000-watt high pressure sodium lights and two 400-watt metal halide lights, attached to the pole on CPDC's tract.
Farrell determined OTR's share of the wattage used on the meter from October 26, 1988 to August 5, 1997 was 67.9%. He arrived at this figure by dividing OTR's 8,000 watts, by the total wattage of 11,800. From August 6, 1997 until the time of the hearing, the meter had been rewired to connect only OTR's watts, thus OTR was responsible for the entire bill for that time period. According to Farrell's calculations, the amount OTR was liable for was $18,975.97.
In opposition to the motion, OTR filed an affidavit executed by Linda Kuhns. The information contained in Kuhns' affidavit brought up the issue that there were other lights in the parking lot area in addition to the lights owned by OTR and CPDC. Kuhns' affidavit conceded she did could not identify what meter serviced the light pole on OTR's portion of the parking lot, but that she always understood that all of the parking lot lights and electrical sign pylons were attached to the same meter belonging to the shopping center owner. Additional exhibits attached to Kuhns' affidavit indicate the existence of additional light fixtures in the parking lot of the Livingston Square Shopping Center. The existence of these additional lights presents an issue of material fact as to whether there was additional lighting connected to CPDC's meter, and whether Farrell's calculation of OTR's share of the utility bill was proper. Accordingly, the summary judgment on the amount of damages OTR was liable for was improper.

CONCLUSION
After review of the record, we find the trial court properly granted the motion for summary judgment finding OTR liable for the electricity used by its parking lot lights located in the Livingston Square Shopping Center in Denham Springs. However, we also find there is an issue of material fact regarding the amount of damages for which CPDC is entitled. We also find there are material issues of fact regarding how OTR's share of electricity was calculated. Therefore, we reverse that part of the judgment fixing the amount of damages and remand the matter to the trial court for a trial to determine OTR's share of electricity used and the amount of damages due. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded. All costs of this appeal are to be divided equally between the plaintiffs, Commercial Properties Development Corporation, Livingston, La. Commercial Properties Development Company, L.L.C., and defendant, The State Teacher's Retirement System of Ohio.
AFFIRMED IN PART. REVERSED IN PART, AND REMANDED.
*543 WEIMER, J., concurs with reasons.
FOIL, J., concurs in the result.
WEIMER, J., concurs.
I concur in the result, but write to make the following observations.
This matter involves two apparently innocent parties from the standpoint that one inadvertently paid for the electricity to light a portion of the other's parking lot while the other received the benefit of the lighting. There is no evidence the beneficiary of this situation realized a benefit was being conferred, nor that the party paying for the electricity realized it was paying for the other's lighting until many years passed. What concerns me in fashioning a remedy is that the party paying for the electricity for all those years is potentially partially at fault for the failure to uncover these overpayments and the beneficiary may have used other means relative to lighting the parking lot had it been aware of the costs.
As Justice Albert Tate, Jr. stated in The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L.Rev. 446, 459 (1977): "The root principle of an unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid." Given the length of time the benefit was conferred, it would seem the plaintiff in this matter should bear some responsibility.
Louisiana Civil Code article 2298 provides, in part: "The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less." In applying this portion of Article 2298, based on the unique facts and circumstances of this case, I suggest that comparative fault principles might be applied in determining the amount of compensation due because this amount is "measured by the extent to which one has been enriched or the other has been impoverished, whichever is less." Certainly, the degree of fault of each of the parties in allowing this situation to continue is a relevant consideration in determining the extent of enrichment or impoverishment. Article 2298 and the comparative fault principles of Article 2323 are both in the title of the Civil Code which addresses "Obligations Arising Without Agreement."
The language of Article 2323 is sufficiently broad to be applied to the facts of this matter:
In any action for damages where a person suffers ... loss, the degree or percentage of fault of all persons causing or contributing to the ... loss shall be determined, .... If a person suffers... loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the ... loss.
See Charrier v. Bell, 496 So.2d 601, 602 (La.App. 1 Cir.), writ denied, 498 So.2d 753 (1986), which involved a plaintiff's claim to be declared "owner of Indian artifacts [he had unearthed] and his request for compensation for his excavation work in uncovering those artifacts under the theory of unjust enrichment." In discussing the application of fault principles to unjust enrichment, the court stated: "Obviously[,] the intent [of unjust enrichment] is to avoid awarding one who has helped another through his own negligence or fault or through action taken at his own risk." Charrier, at 607.
As stated by Justice Albert Tate, Jr. in The Louisiana Action for Unjustified Enrichment, 50 Tul.L.Rev. 883 (1976): Unjust *544 enrichment is "founded on natural law" and "is based on equitable and moral considerations." As such, the responsibility of each party for the lengthy continuation of this situation should be evaluated in fashioning a remedy.
NOTES
[1] The summary judgment on liability was never certified as a final judgment pursuant to LSA-C.C.P. art. 1915.
[2] OTR purchased the parking lot from T.G.&Y. and assumed its rights and obligations previously held by T.G.&Y.