955 So.2d 151 (2007)
OBJECT TECHNOLOGY INFORMATION SPECIALISTS CORPORATION
v.
SCIENCE AND ENGINEERING ASSOCIATES, INC., Sea Information Services, Inc., and Robert Savoie.
No. 2006-CA-0162.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 2007.
*152 Chadwick W. Collings, Thornhill & Collings, L.C., Slidell, LA, for Plaintiff/Appellee.
Mark R. Beebe, Lee C. Reid, Robert N. Markle, Raymond P. Ward, Adams and Reese LLP, New Orleans, LA, for Defendants/Appellants, Science and Engineering Associates, Inc. and Sea Information Services, Inc.
Jeffrey A. Schwartz, Watkins Ludlam Winter & Stennis, P.A., New Orleans, LA, for Defendant/Appellant, Robert Savoie.
(Court composed of Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO JR.).
MICHAEL E. KIRBY, Judge.
Defendants, Science and Engineering Associates, Inc., SEA Information Services, Inc. and Robert Savoie, appeal the trial court judgment denying their exceptions of improper venue and prematurity.
This matter arises from a contract dispute. The plaintiff in this case, Object Technology Information Specialists Corporation ("OTIS"), filed a petition for declaratory relief, injunctive relief and damages against the defendants on April 7, 2004. According to this petition, OTIS entered into a contract with Science and Engineering Associates, Inc. on June 9, 1999 in which Science and Engineering Associates, Inc. agreed to perform work for the United States government at the University of New Orleans Research and Technology Park in New Orleans. The contract was renewed and modified on at least two occasions, with SEA Information Services, Inc. substituted in place of Science and Engineering Associates, Inc. The contract called for OTIS to perform work for the Space and Naval Warfare Command. OTIS alleges that it performed under this contract through March 31, 2004.
In the petition, OTIS alleges that SEA Information Services, Inc. is owned and controlled by Robert Savoie. In February 2004, SEA[1] allegedly contacted OTIS and claimed that certain OTIS personnel had improperly used government resources and time allotted for the Space and Naval Warfare Command contract on another unrelated project for the United States government. OTIS contends that SEA refused to provide OTIS with supporting evidence of SEA's allegations, notwithstanding OTIS' request for such evidence.
On April 1, 2004, OTIS received a letter from SEA seeking to terminate its contract with OTIS, and further requested that OTIS refund an amount that SEA alleged was improperly billed under the *153 Space and Naval Warfare Command contract. OTIS attached to its petition the contract and its renewal and modifications, and alleged several grounds that prevented termination of the contract. OTIS alleged that SEA manufactured the allegations against OTIS for the sole purpose of removing OTIS from the Space and Naval Warfare Command project so that SEA could perform the work on this project itself and increase its profit margin by eliminating OTIS as a subcontractor.
In addition to damages, OTIS is seeking declaratory and injunctive relief, specifically including an order that the contract between OTIS and SEA remain in effect until the trial court rules on the merits of its petition. OTIS obtained a temporary restraining order after the suit was filed. SEA filed a motion to dissolve the temporary restraining order, but SEA filed a notice of removal of this case to federal court before the motion to dissolve the temporary restraining order was heard. In the notice of removal, SEA alleged that OTIS' actions are governed by the Contract Disputes Act, 41 U.S.C.A. § 601 et seq. ("CDA"). OTIS filed a motion to remand the case back to state court, and the motion was granted by the United States District Court for the Eastern District of Louisiana.
After remand, SEA filed exceptions of improper venue and prematurity. The trial court denied the exceptions, and SEA now appeals.
Prior to addressing SEA's arguments on appeal, we must first address OTIS' motion to dismiss this appeal. OTIS argues that the judgment appealed from in this case is a non-appealable interlocutory judgment. According to OTIS, La. C.C.P. article 1915 and the 2005 amendment to La. C.C.P. article 2083, which became effective on January 1, 2006, preclude the appeal of this judgment.
The trial court's denial of exceptions of improper venue and prematurity is an interlocutory judgment that is not susceptible to being certified as final for purposes of immediate appeal under La. C.C.P. article 1915. Prior to the 2005 amendment to La. C.C.P. article 2083, which became effective on January 1, 2006, an appeal could be taken from an interlocutory judgment "which may cause irreparable injury." The amended version of La. C.C.P. article 2083 states that an interlocutory judgment is appealable only when expressly provided by law. Because this amendment is procedural in nature and there is no legislative expression to the contrary, the amendment applies both prospectively and retroactively. La. C.C. article 6.
There is no law expressly providing for the appealability of a judgment denying an exception of improper venue or a judgment denying an exception of prematurity. Accordingly, the judgment appealed from is a non-appealable interlocutory judgment. However, because the order granting a suspensive appeal in this case was granted several months prior to the effective date of the amendment to La. C.C.P. article 2083, it is the opinion of this Court that to dismiss SEA's appeal would be unfair under these special circumstances. Instead, we choose to exercise our general supervisory jurisdiction and the statutory authority granted to us by La. C.C.P. article 2164, and convert this appeal to an application for supervisory writs. See, In re Depland, XXXX-XXXX (La.App. 4 Cir. 8/6/03), 854 So.2d 438.
In its sole assignment of error, SEA argues that the trial court erred in denying its exceptions and permitting this case to go forward in state court when the provisions of the contract between the parties dictate that any dispute arising out of, or relating to, the contract be submitted first to a Contracting Officer for resolution, *154 in accordance with the CDA's procedures. The contract between the parties includes the following clause:
This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. [§§] 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes [Dec.1998], which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under this contract.
In response to SEA's argument, OTIS argues that the CDA is intended to deal solely with disputes between the United States government and its contractors, and does not apply in situations such as the one in the instant case, which involves a dispute between a contractor of the United States government and one of its subcontractors. OTIS further argues that submitting the claim first to a Contracting Officer would be a vain and useless act because the Contracting Officer will refuse to hear the claim because of the alleged inapplicability of the CDA in this situation.
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Commercial Properties Development Corp. v. State Teachers Retirement System, XXXX-XXXX, p. 6 (La.App. 1 Cir. 3/28/01), 808 So.2d 534, 540. A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it or that it was not explained or that he did not understand it. Freeman v. Minolta Business Systems, Inc., 29,655, p. 12 (La.App. 2 Cir. 9/24/97), 699 So.2d 1182, 1189. Thus, unless there is evidence of fraud, misrepresentation, or deceit, one who signs a written contract is bound by its terms. Id.
In this case, OTIS does not contest the validity of its contract with SEA, nor does it contend that the inclusion of the CDA clause was the result of fraud, misrepresentation or deceit. Through its lawsuit, OTIS is attempting to prevent SEA from terminating its contract with OTIS. At the same time, OTIS is also seeking to avoid enforcement of the CDA clause, to which both parties agreed when the contract was executed.
When a party seeks to enforce the provisions of a contract, that party must accept all of the terms of the contract. Shroyer v. Foster, XXXX-XXXX, pp. 8-9 (La. App. 1 Cir. 3/28/02), 814 So.2d 83, 89. The party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then repudiate it when it works to its disadvantage. Id. Whether or not the Contracting Officer will agree to hear this claim is not the issue before us. When the parties executed the contract between them, they agreed that any dispute "arising under or relating to" the contract would first be submitted to a Contracting Officer in accordance with the CDA's procedures. The fact that OTIS believes that submitting the dispute to a Contracting Officer before proceeding to state court would be a waste of time is not a sufficient reason to invalidate the CDA provision agreed to by the parties.
Furthermore, we find no merit in OTIS' argument that SEA waived its right to object to venue because its exceptions were filed after it had filed a motion to dissolve a temporary restraining order in state court and an answer in federal court after removing the matter to federal court. *155 OTIS argues that SEA submitted itself to the court's jurisdiction when it filed those pleadings. We find that this matter is analogous to disputes arising under or relating to contracts containing arbitration clauses.
Waiver of arbitration is not a favored finding, and there is a presumption against it. Dufrene v. HBOS Manufacturing, LP, 2003-2201, p. 6 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1211. Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. Id. In this case, SEA has not substantially invoked the judicial process to the detriment or prejudice of OTIS. To the contrary, SEA's actions in removing the matter to federal court and in filing the motion to dissolve a temporary restraining order in state court were in furtherance of its attempt to invoke the CDA procedure. We conclude that SEA did not waive its right to file exceptions in this case once the matter was remanded back to state court.
The venue of first resort agreed to by the parties for dispute resolution is with a Contracting Officer operating in accordance with CDA procedures. If the Contracting Officer concludes that the CDA is inapplicable in this situation, then the matter can be returned to state court. Prior to such action by a Contracting Office, the filing of this case in state court is premature.
For the reasons stated above, we conclude that the trial court erred in denying SEA's exceptions of improper venue and prematurity. Accordingly, we grant the writ, reverse the trial court judgment denying SEA's exceptions of improper venue and prematurity, and remand this matter to the trial court for further proceedings consistent with this opinion.
APPEAL CONVERTED TO WRIT; WRIT GRANTED; JUDGMENT REVERSED; CASE REMANDED.
NOTES
[1] From this point forward, we will collectively refer to Science and Engineering Associates, Inc., SEA Information Services, Inc. and Robert Savoie as SEA.